SAMUEL LOCKWOOD,

*vs.*

MARTIN W. BATES, assignee in trust, and EZEKIEL MITCHELL and PETER ROBINSON, administrators of JOHN MITCHELL, deceased.

*Sussex, Sept. T.* 1833.

An order, granting a re-hearing of a decree in equity,does not *per se* vacate the decree ; but only opens it for reversal, alteration or correction.

If an order for a re-hearing is dismissed, or discharged by agreement of the parties, without a re-hearing had, the original decree stands precisely as if such order had not been granted.

An agreement to exonerate sureties in a recognizance entered into by a defendant in a writ of *ne exeat,* upon their paying part of the decree recovered against the defendant, does not discharge the liability of the defendant under the decree.

*It seems,* that the defence of compromise or release is available by plea only, and not by answer.

One of several partners, to whom, in a suit for the final settlement of the partnership accounts, a share of the balance struck is payable under the decree in such suit, may set it off in equity against a judgment at law held against him by the defendant in the decree.

Such right of equitable set off is not affected by the fact that, under the same decree, shares of the partnership balance are made payable to other partners also ; provided, the partners are entitled under the decree *severally,* and not *jointly.*

The equitable assignee of a judgment, even for a valuable consideration, and without notice of any existing equity against the judgment, takes it subject to all equities of the defendant in the judgment, accruing before he has notice of the assignment ; and, consequently, subject to his right to set off a debt due him from the judgment creditor under a decree in equity made prior to his receiving notice of the assignment. A decree made after the notice, but entered *nunc pro tunc* as of a date prior to the notice, is of the same effect, in this respect, as if it had been *in fact* made at such date.

Under an assignment made to secure a pre-existing debt, the creditor has not the equity of a purchaser for valuable consideration.

A *lis pendens,* is constructive notice, not only to affect purchasers of the subject matter of the litigation, but also to protect all rights and equities arising out of it. In the present case, the pendency of a suit in equity resulting in a decree for the payment of a partnership balance by the defendant to his co-partner, which the latter sought to set off against a judgment due from him to the defendant, *Held* to be *constructive* notice of the co-partner's equity to an assignee of the judgment who took pending the litigation. *Held also,* that the assignee of the judgment, having been one of the solicitors in the suit in equity, must be taken to have had *actual* notice of the co-partner's equity of set off.

Mutual credits between two parties, though they cannot be set off at law, are ground for a set off in equity.

BILL TO OBTAIN THE BENEFIT OF A SET OFF.—This bill was filed under the circumstances following:

A bill in equity had been filed in the Court of Chancery for Kent county, at the suit of James Clayton, Samuel Lockwood and Armwell Long, three members of the firm of Mitchell, Lockwood & Co., against John Mitchell, the

remaining member of the firm, the object of which bill, was to obtain a settlement of the affairs of the partnership by Mitchell, who had been the active partner. The cause was proceeded in to a hearing at the August Term, 1823, and the opinion of the then Chancellor, Ridgely, was announced at the February Term, 1826; but the defendant, Mitchell, having died since the hearing, the Chancellor, upon the petition of the parties interested, at the February Term, 1826, ordered a final decree to be entered *nunc pro tunc*, as of the 8th day of August, 1825.

By the decree the rights of the several partners were adjudged, and the defendant, Mitchell, was ordered to pay to them their several shares of the net partnership assets. As part of the decree the said defendant was ordered to pay to Samuel Lockwood, one of the partners,— the complainant in the present bill,—the sum of $1818.95. Pending the suit for the settlement of the partnership, Samuel Lockwood was indebted to John Mitchell, in a judgment bond for the real debt of $3000, dated the 3d of December, 1817, on which bond judgment was entered in the Court of Common Pleas, on the 9th of January, 1819. There was a credit to the judgment of $1000, as of Feb. 11th, 1818, leaving, however, with the interest in arrear, a balance due to Mitchell, larger than the sum which was payable to Lockwood, under the decree in the partnership suit. On the 8th of December, 1824, and while the partnership suit was pending, Mitchell executed a written assignment of the judgment he held against Lockwood to Martin W. Bates, in trust, for the payment of certain creditors of Mitchell. Notice of this assignment was given to Lockwood, on the 5th of November, 1825, and on the 22d of June, 1830, the judgment was marked on the record " for the use of Martin W. Bates, as per assignment to him " dated the 8th December, 1824." Martin W. Bates, to whom the judgment was assigned in trust, was, at the time of receiving such assignment, one of the solicitors in the then pending partnership suit.

The present bill, setting forth the above facts, prayed that Lockwood might have the benefit of the decree made in 1825, in the partnership suit, by way of set off against the judgment due from him to Mitchell, now standing for the use of Martin W. Bates, in trust. The answer, admitting the facts set forth in the bill, relied upon three grounds of defence, viz:

1. That the assignment of the judgment against Lockwood, in trust for creditors, having been made on the 8th December, 1824, prior to the decree in the partnership suit in 1825, the rights of Lockwood's creditors under the assignment could not be affected by the subsequent decree against Mitchell, the original judgment creditor.

2. The answer set forth that, pending the partnership suit, a writ of *ne exeat* was granted against Mitchell, the defendant therein, under which he entered into a recognizance, with sureties, to secure payment of such amount as should be decreed against him in that suit. Afterwards, the complainants agreed with the sureties in writing, that upon the condition of their paying $1000 the complainants would not hold them responsible under the recognizance. That sum was afterwards paid by the sureties; and the answer of the defendants in the present suit insisted that by such agreement, and the payment made under it, the recognizance was discharged, and with it the liability of Mitchell under the decree in the partnership suit.

3d. The answer also set forth that after the decree in the partnership suit, to wit, on the 11th of April, 1826, a petition for a re-hearing was filed ; and that the same, after argument on the 22d of Feb'y, 1827, was granted. Subsequently, on the 9th of July, 1827, an agreement was filed, whereby it was in terms "agreed between the parties " that the order for a re-hearing should be discharged, " and that the decree rendered by the Chancellor on the " 24th of February, 1826, as of the 8th of August, 1825, " should remain firm and stable forever ; and that the

" said order for rehearing is accordingly discharged, and " the said decree is hereby made firm and stable forever." The answer insisted that the order for re-hearing *ipso facto* vacated the decree of 1825, leaving the cause as if no decree therein had been rendered ; and that the subsequent agreement to discharge the order for rehearing could not have the effect intended by the parties, so as to re-establish the original decree. It was contended also, that the assignee of the judgment ought not to be prejudiced by the agreement, inasmuch as he was not a party to the partnership suit and had no notice of the proceedings relative to the re-hearing.

The cause was put at issue, and came before the Chancellor for a hearing upon the bill, answer and exhibits. There were no depositions,—an agreement of counsel being filed, in lieu of proof, as to the date at which Samuel Lockwood received notice of the assignment of Mitchell's judgment against him, to wit, the 5th of November, 1825.

*Frame,* for the complainant.

*E. D. Cullen* and *M. W. Bates,* for the defendants.

JOHNS, JR., CHANCELLOR.—In considering this case I have reversed the order in which the several grounds of defence are presented, and shall examine the last two before adverting to the question of set off.

1. The effect of the order granting a re-hearing does not *per se* vacate the original decree. It only opens it either for reversal, alteration or correction ; and if the re-hearing does not take place, and the order should be dismissed, the original decree stands precisely as if no such order had been granted. The parties, having, by their agreement entered on the chancery docket, discharged the order for re-hearing, it must be presumed to have been done under the sanction and approbation of the Chancellor. The re-

hearing not having taken place, no action of the Chan-
cellor was or could be necessary to give validity to the
to the original and final decree,—which, upon the dis-
charge of the order for re-hearing, became firm and stable,
independent of any agreement of the parties to that effect.
The additional objection, viz : that the assignee, not being a
party, should not be prejudiced, as he had no notice, will
hereafter be considered, when I shall advert to the decis-
ions in relation to purchasers *pendente lite.*

2. The next ground of defence is that of compromise,—
under which it is insisted that the recognizance was satis-
fied and the order for re-hearing discharged. This, it has
been contended, satisfied the decree; and, therefore, the
complainant has no further interest or claim under it. In
considering this ground,—which has been much relied on
by the defendants,—even supposing it to be true, it appears
doubtful whether a defendant can take advantage of it in his
answer and whether it is not matter which must be relied
on by plea. In 2 *Chitty's Eq. Dig.* 816, it is said, "a defence
" of compromise or release is not proper for answer ; it is
" available by way of plea only. *Leonard vs. Leonard* 1
*Ball & B.* 323." But, considering it as properly embraced
within the answer, the whole question is covered by the
written agreement. No proof has been offered of any
compromise, and the agreement must speak for itself. If
we advert to it, it will appear, by an express provision
contained in the agreement, that the parties were not to be
thereby precluded from any remedy they might have
against Mitchell. They bound themselves not to proceed
on the recognizance, against the sureties, on condition of
their paying $1000. This sum being afterwards paid, the
receipt thereupon given must be considered in accordance
therewith, and cannot be understood so as to contradict
the written agreement of the parties. The recognizance
taken under the writ of *ne exeat,* was no more than a secur-
ity for the performance of the decree; and it was com-

petent for the parties in whose favor it was taken to discharge the same, so far as the sureties were liable, without prejudice to their claims against their principal debtor under the decree. It amounted to no more than an abandonment of the security they had obtained under the writ of *ne exeat,* and left them to their usual remedies under the decree itself.

The argument founded upon the agreement discharging the order for a re-hearing, by which, as it has been contended, a compromise must have taken place, when extended beyond the sureties is inconsistent with the record entry. For, if it had been the intention of the parties to discharge the principal debtor, why did they declare that the original decree should remain firm and stable forever ?

3. The remaining question in this case,—the one which appears to be the most material and important,—relates to the matter of set off. Before considering this, it will be necessary to state accurately the dates of the final hearing of the cause, the decree, the assignment and notice thereof. It appears, the final hearing of the cause in chancery was in August, 1823, previous to which the accounts had been filed and excepted to ; and, at the August Term, 1823, the same was fully heard, and the Chancellor held the same under consideration, for the purpose of making his final decree. The assignment of the judgment was made in December, 1824; and, as appears from the agreement filed in this cause, notice of the assignment was not given to the debtor until November, 1825. In February, 1826, on petition, the Chancellor made his final decree, which he ordered to he entered as of the last term, viz: the August Term, 1825. The decree is in the following words :

"This cause having come on to be heard, on the 11th day "of August, A. D. 1823, and the bill, answer, accounts "filed, and the exceptions thereto, and the proofs and alle-

56

" gations of the parties, being read and heard, and the
" same debated by counsel learned in the law on both sides;
" and the Chancellor having taken time to consider the
" same; and the said Samuel Lockwood, Armwell Long
" and Walter Douglass, administrator of James Clayton,
" deceased, having at this term presented their petition to
" the Chancellor, stating that the said John Mitchell
" heretofore moved into the State of Maryland, and hath
" died there since the last term, and praying that the
" decree of the Chancellor may be made and signed *nunc*
" *pro tunc*; and it being ordered by the Chancellor, this 22d
" day of February, A. D. 1826, that the final decree in this
" cause should be enrolled and signed as of the last term
" of this Court, to wit, as having been made and rendered
" the 8th day of August, A. D. 1825.—The Chancellor
" doth now, this 24th day of February, A. D. 1826, order,
" adjudge and decree, as of the said last term of this Court,
" to wit, as of the said 8th day of August, 1825, that the
" said John Mitchell, the defendant in this cause, shall pay
" to Armwell Long, one of the complainants in this cause,
" the sum of $1,468.23; that he shall likewise pay to
" Samuel Lockwood, another of the complainants in this
" cause, the sum of $1818.95¼; and that he shall further
" pay to the said Walter Douglass, administrator of the
" said James Clayton, deceased, the sum of $1706.61;
" and that the said complainants recover their respective
" costs in this suit from the said John Mitchell."

As this question of set off is to be considered with
reference to the rights of the assignee, it may be well first
to examine what would have been the condition of the
obligee, had no assignment taken place. This will present
the general question, whether Lockwood under this decree
could have availed himself of the sum decreed to be due
and payable to him, as a set off against the judgment held
by Mitchell against him for a separate debt. At law, part-
ners cannot maintain an action against each other, unless

it be an action of account, until they have settled their accounts, or until a final balance is struck.   In *Fromont vs. Coupland,* 9 *Eng. Com. Law, Rep.* 366, *Best, C. J.* says;— " If, after a partnership has been dissolved, the parties adjust " a balance, and one of them makes a promise to pay, " there arises on that a moral consideration which may be " the subject of an action. The case in Holt goes, perhaps, " somewhat further than this.   However, it is enough to " say, that the opinion of Buller, Justice, in *Smith vs. Bar-* " *row,* is decisive of the present case.   He there says, one " partner cannot recover a sum of money received by the " other, unless, on a balance struck, that sum be found due " to him alone.   So that, before there can be an action or a " set off, in respect of a claim arising out of a partnership " account, there must be a final balance struck.   The same " doctrine is laid down in *Foster vs. Allanson,* 2 *T. R.* 479. " It has been contended that a balance was struck in the " present case.   But I think not.   A balance during the " continuance of the concern will not do.   It must be a " final balance of all the partnership accounts.   There has " been nothing like that here ; and we might be doing great " injustice if we were to allow the set off.   The balance " in question was only upon a weekly account ; and upon " an annual or final account the result might have been " different.   Upon the balance thus struck no action could " have been maintained ; and, unless an action could have " been maintained, the set off cannot be allowed " *Park and Burrough, J.'s* concurred.

This decision agrees with all other cases in principle, and determines the right of set off between partners at law by the right of action.   The right of set off is dependent on the final settlement; and this result can only be obtained, either by the act of the partners, by a bill in chancery, or by the action of account.   If, then, on dissolution of a partnership, the accounts between the partners are, on bill filed, finally settled and adjusted, and the bal-

ances respectively due ascertained and liquidated, and a sum certain, severally due and payable, decreed,—it does appear that if the parties entitled should elect to proceed at law, each would, under the decree, have a distinct and separate right of action ; and this, upon the same principle on which they would have a right of action, in case the settlement had been made by the partners themselves. Hence, I conclude that, under this decree, Lockwood, for the amount due and payable to him from Mitchell, if he had elected to pursue a legal remedy, might have maintained his action of assumpsit; and if so, he being separately and in his own right entitled under the decree to receive a sum certain as due and payable to him from Mitchell, it is evident he would have a right to set off the same against a judgment due from him to Mitchell.

It has been contended that the decree, being made in a cause where several are complainants, is similar to a joint judgment and, therefore, cannot be set off against a judgment against one only of the complainants. On this point, it does appear that the character of the decree is misapprehended. The bill filed by the several partners against Mitchell, the acting partner, is not a suit instituted by the firm to recover a partnership debt. Its object was not to ascertain a sum due jointly; but, the partnership being dissolved, it is the mode adopted by the different members interested in the joint concern to adjust and settle their individual interests, and to ascertain and recover what is due to each separately from Mitchell. If it had been a suit on behalf of the firm, to recover a debt due the firm, then it would have been competent for either complainant under the decree to have received the whole, and to have given a discharge for the same. And, on the death of any one of the complainants, the survivors would have been entitled to the whole sum. It is the necessary result of a joint-judgment, or of a joint interest under a decree, that the survivor is entitled. But how can the right of survivor-

ship apply to the decree of 1825 ? By the express language of the decree, $1818.95 is due and payable from Mitchell to Lockwood; and he could not pay the same, or any part thereof, to either of the other complainants; nor could they give a discharge for it, or become entitled to it by survivorship. On Lockwood's death the right to receive it would have passed to his personal representatives as fully and absolutely as any other separate debt. The suit being a proceeding between partners, after dissolution of the firm, distinguishes it from the cases cited in the argument,which were decisions relative to the right of set off as between third persons, having separate demands against members of the firm and also indebted to the partnership. In all such cases, it would be inconsistent with the doctrine of set off to permit the separate debt to be deducted from the claim of the partnership; because, like the case of a joint judgment, it would be charging the joint interest with an individual debt.

Supposing therefore no assignment had been made as between Lockwood and Mitchell, the right to set off the amount due Lockwood under the decree, according to the principles of the decided cases would clearly have existed. The sum was a debt due from Mitchell to Lockwood, and it was liquidated and certain.

The next subject for consideration is the effect and operation of the assignment. It is admitted that the assignee takes subject to all the equity existing in the obligor; but the counsel for the defendant has insisted that the rule is limited to the equity existing at the time of the assignment. For the purpose of understanding this part of the case it will be necessary to advert to the assignment, and ascertain whether either the assignment, or the subject matter thereof, is within any statutory provision of this State. We have an Act of Assembly authorizing the assignment of bills and specialties. (*Dig. Del. Laws,* 42.) We have also statutory provisions for the assignment of

judgments to sureties and to special bail, by whom the judgments have been paid. But the present case is not embraced within the provisions of any of these statutes ; and I know of none other under which this assignee can derive the legal title. The peculiar character of this assignment requires to be particularly adverted to. It appears, from the proof in the cause, that judgment was entered on the bond executed by Lockwood to Mitchell, under and by virtue of the warrant of attorney, and that afterwards the same was indorsed for the use of Levi Dukes;—that in December, 1824, an extract from the record was obtained and an assignment made of the judgment to Martin W. Bates, Esq., for the purpose of paying a debt due from Mitchell to William Schlayter, of Philadelphia, and so much as might remain, after paying the Schlayter debt, to be applied to a debt due from Mitchell, together with Jacob Biddle, to Longstreth & Bailey of Philadelphia. It appears that the indorsement under this assignment was not made on the record until 23d June, 1830, when it was marked for the use of M. W. Bates, as per assignment to him, dated the 8th of December, 1824, on an extract. By agreement of counsel, filed in the cause, it is admitted that Samuel Lockwood, on the 5th of November, 1825, had notice of the assignment of the judgment by Mitchell to Martin W. Bates. How far the rights of the debtor are involved or affected under the transfer, independently of legislative enactment on the subject, must depend upon the general rule relative to notice. This would fix the 5th of November, 1825, the date of the notice, as the time when the liability of the debtor to the assignee commenced.

The next inquiry relates to the effect and operation of the decree which, under the petition in February, 1826, was ordered by the Chancellor to be entered and enrolled as of the 8th of August, 1825. And this presents for consideration the question, whether the assignee of the

judgment, having notice of the suit pending in chancery, having acted as solicitor in the cause, and being fully acquainted with the whole proceeding, including the final hearing in August, 1823, does not come within the rule of equity as stated by Sir William Grant, Master of the Rolls, in the case of *The Bishsop of Winchester vs. Paine,* 11 *Ves. Jr.* 194; that " he who purchases during the pen-" dency of the suit is bound by the decree that may be " made against the person from whom he derives title." That a *lis pendens* is, of itself, notice to the purchaser is a rule well established. See 1 *Johns' Ch. Rep.* 577–578. One of the Ordinances of Lord Bacon, laid down for the better and more regular administration of justice in the Court of Chancery, was that "no decree bindeth any that cometh in *bona fide* by conveyance from the defendants before the bill exhibited, and is made no party, neither by bill nor order; but when he comes in *pendente lite,* and while the suit is in full prosecution, and without any color of allowance or privity of the land, there regularly the decree bindeth." *Lord Bacon's Works, Vol.* 4, *p.* 511. In the case of *Martin vs. Stiles,* cited in 11 *Ves. Jr.* 200, the bill was filed in 1640, and was abated by death in 1648; and a bill of revivor was filed in 1662; and the purchase was made in 1651; —and yet, as the purchase was, by relation of the bill of revivor, made *pendente lite,* the purchaser was held bound, and by no less a judge than Lord Clarendon. When this case was afterwards, in a new shape, brought before Lord Keeper Bridgman, 1 *Cas. in Ch.* 150, he observed that it was not the form but the substance of a decree, that all are bound who come in *pendente lite.* The case of *Culpeper vs. Austin,* 2 *Ch. Ca.* 115, 221, is a strong determination on the same point In that case, the testator had conveyed his lands to his executors in fee, to pay his debts; and after his death the defendant purchased the lands of the executors *for a valuable consideration.* The heir brought his bill to have the land, on the ground that the lands were not

wanted to pay debts; and the Lord Chancellor held, that the suit pending between the heir and the trustee,to have an account, was sufficient notice in law, without actual notice of the suit; and that the party purchased at his peril ; so that if, in the event of the suit, it appeared that the sale was unnecessary and improper, the heir would recover against the purchaser. It turned out afterwards that the defendant lost his purchase, though he had no actual notice ,of the suit, and though he had purchased and paid the same day the bill was exhibited. In 1 *Ch. Ca.* 301 : *Finch Rep.* 321, there we repurchases made by the defendant for a valuable consideration, *pendente lite* ; and for that reason the purchasers were decreed to reconvey, and deliver up the writings. Chancellor Kent, after viewing the preceding cases, declares the same general principle, that as to all persons who come in as purchasers, *pendente lite,* though they are no parties to the suit, they and their interests shall be bound and avoided by the decree; and this is laid down as the known law in several cases to be found in Vernon. *Preston vs. Tubbin,* 1 *Vern.* 286. 1 *Vern.* 318, 459. 2 *Vern.* 216. See also, 2 *P. Wms.* 482. This doctrine came frequently under the review of Lord Hardwicke, and he always held that a purchaser, *pendente lite,* was bound by the decree in the suit. 2 *Atk.* 174; 3 *Atk.* 392. Lord Camden enforced the same rule. *Amb.* 676.

But, it may be said, that admitting the rule as settled by the preceding decisions, yet the assignee in the present case was not a purchaser of the subject matter in litigation, but of a judgment rendered for a separate debt of one of the partners. This objection renders it necessary to consider the question as to what was the equity of the obligor in the bond and debtor under the judgment; for the rule is well established that the assignee takes subject to all the equitable claims of the debtor; and in the present case, it being an assignment of a judgment, the assignee must take subject to all the equities of the debtor up to

the time when the debtor had notice of the assignment. In the case of *Murray vs. Ballou,* 1 *Johns Ch. Rep.* 581, it was admitted that the assignee of the bond and mortgage took them subject to all the equitable claims of the obligor and mortgagor, but not to a latent equity of a third person. Yet, even with respect to the latent equity of a third person, in *Renfiew vs. Ferris, et al.,* 1 *Dow's Parl. Rep.* 50, it was held, on an appeal in a Scotch case, " that a latent " equity in a third person shall not defeat a *bona fide* assignee " of a right, without notice ;" from which it appears that *with* notice it would. In the present case, it is not necessary to consider the rights of third persons, since the inquiry is confined to the equity of the obligor, who is the debtor under the judgment which has been assigned, and is within the rule that the assignee takes subject to all his equitable claims.

In *Norton vs. Rose, Washington's Rep.* 233, this question as to the equities of the obligor, and how far they prevail against an assignee, was fully considered and decided. A bill was exhibited in the Court of Chancery, in Virginia, by the appellant, to be relieved against a judgment at law recovered against him by the appellee upon an assigned obligation for the payment of money. The equity stated was, that the plaintiff had bound himself to pay to George Anderson £450, being the balance supposed to be due upon a settlement of accounts ; that he had insisted upon certain credits for money paid by Charles Harris to George Anderson, to a part of which, he, the plaintiff was entitled, but that the plaintiff, relying upon Anderson's assurances that no payment had been made to him by Harris, and that he was insolvent, gave his obligation to Anderson for the £450. The bill prayed an injunction against a judgment obtained upon the obligation by the defendant, Rose, as assignee thereof; also to be allowed all discounts which he could make appear against Anderson; and for general relief. An injunction till further order was awarded. The defend-

57

ant, Rose, by his answer, denied any notice of the plaintiff's equity at the time of the assignment made to him, and insisted that he was a *bona fide* purchaser of the debt in question, for a valuable consideration paid to Anderson.

The decree, or so much of it as relates to the subject of our present inquiry, determined that the plaintiff could not set off against the said debt, as held by Rose, any equitable demand which he might have against George Anderson ; and the bill was dismissed as to the defendant, Rose. From this decree Norton appealed. The case was fully argued in the Court of Appeals, and the judges delivered their opinions, *seriatim.* The principles applicable to the present case are so clearly and forcibly stated in these opinions that I cannot better express my own views than to adopt the opinions at large.

*Roane, J.* said "There are some points in this cause which " are not controverted by either side. It is admitted that, " upon the principles of the common law, a *chose in action* " is not assignable ; that is, the assignment does not give " to the assignee a right to maintain an action in his own " name. It is also conceded that, in England, the " assignee of a bond takes it charged with every species " of equity which was attached to it in the hands of the " obligee. If a different principle prevail in this country " it must grow out of the Acts of Assembly which author_ " ized the assignment of bonds. The intention of these " was to alter the common law, so far as it prevented " bonds from being assigned, and to give to the assignee " a right to sue in his own name, in the same manner as " the obligee might have done. It was not intended to " abridge the rights of the obligor or to enlarge those " of the assignee beyond that of suing in his own name ; " and since it is clear, that prior to this law an original " equity attached to the bond, following it into the hands " of the assignee, this law does not expressly nor by im- " plication destroy that principle. With respect to the

" proviso in the Act of Assembly, it contemplates *legal dis-*
" *counts* only.   The words 'the plaintiff shall allow all
" discounts which the defendant can prove ' were meant
" to  extend those discounts beyond  the  credits  which
" might be indorsed on the bond ; and the latter words
" ' before notice of such assignment was given to the defend-
" ant' were meant to restrain the discounts to such as
" existed prior to notice of the assignment.   This enlarg-
" ing and restraining proviso was necessary, in order to
" express clearly the  meaning of the  Legislature : but
" neither the proviso, nor any other part of this Act, was
" intended to extend to or abridge *equitable discounts,* which
" were not in the contemplation of the Legislature when
" making this law.  The assignee, it is admitted, takes the
" bond at his peril, so far at least as the possible claim of
" the obligor to discounts may extend.   If he chose not
" to encounter this risk, nor to repose entire confidence
" in the obligee, he should inquire of the obligor, and
" from him obtain information respecting, at least, this part
" of the subject.   With the same convenience may the
" inquiry extend to any equitable objections attached to
" the bond.   The two cases are precisely within the same
" reason, and I can discover no principle of policy or jus-
" tice which should so widely  distinguish them.   I am
" clear in the opinion that an equity existing against the
" bond is not lost or extinguished by an assignment for
" valuable consideration and without notice.   It is true
" Norton's interest in the goods sold by Harris is not
" established in the proof; but the ground of the Chan-
" cellor's decree being wrong, it must be reversed, and
" the cause remanded for further proceedings so as to let
" in Mr. Norton to the proof of his equity."

*Carrington, J.,*—in the concluding part of his opinion, re-
marked ;—"The case now under consideration comes fully
" within those principles which seem to me to be correct.
" Norton and Anderson were concerned together in trade,

" and upon a settlement of accounts, Norton claimed a
" credit for the proceeds of a quantity of goods in the
" hands of Harris. But, Anderson assuring him that he had
" received no part of those proceeds, Norton, unsuspicious
" of the truth, gave his bond for the balance as it stood.
" Rose, it is admitted, was a fair, *bona fide* purchaser of the
" land. He is chargeable only with neglect. He might and
" ought to have satisfied himself that the debt was justly
" due before he received it. If, upon an inquiry, Norton
" had assented to the payment, or acknowledged he had
" no objections to it, this would have deprived him of his
" equity against Rose. It was easy for any person, wish-
" ing to take an assignment of the bond, to make the
" inquiry. He would know at once where to make the
" application. On the other hand, Norton could not give
" a special notice to the person who was about to obtain it ;
" and the public papers would afford a very uncertain
" channel of information. Upon the whole, I am clear that
" the decree is erroneous and ought to be reversed."

*Lyon, J.,*—said, " If Norton had given this bond before
" assignments were sanctioned by legislative authority, it
" is admitted, on all hands, that his equity would have fol-
" lowed the bond into the hands of an assignee. If so, is it
" possible that the legislature could have meditated so much
" injustice as to exclude him from setting up an objection to
" the debt which, but for the law, he might have made ?
" Whatever would then have been the construction of the
" law must be the construction of it at this day. I mention
" this to shew that the legislature, by making bonds assigna-
" ble, did not mean to deprive the obligors of any equitable
" objections which they might have against them. Upon
" the whole, I concur in opinion with the other judges."
See also the case of *Pickett vs. Morris,* 2 *Washington's Rep.*
255.

The two preceding cases, which were decided in the
Court of Appeals of Virginia, clearly establish the prin-

ciple, that the assignee takes subject not only to the legal but also to the equitable claims of the obligor ; and, in the case of *Norton vs. Rose,* it was a claim arising out of partnership transactions. The equitable claim to a further credit was founded on the right of one of the partners to his proportion of funds received by the other, to whom on settlement he had executed a bond without being allowed the credit. The Court held the assignee liable, notwithstanding he had no notice of the equitable claim and was a purchaser for valuable consideration.

In all the cases I have referred to, the assignee was a purchaser for valuable consideration. But how stands the present case in this respect? Was Martin W. Bates, or were the creditors for whose use he took the assignment of the judgment from Mitchell, purchasers for a valuable consideration ? It appears that after the final hearing of the suit in Chancery, which was had at the August Term, 1823, in which suit Lockwood, as one of the partners, was claiming a balance due him from Mitchell, and the object of that suit was to establish and recover his claim from Mitchell, the whole matter in controversy being confined to the question of indebtedness, and the accounts filed under the interlocutory decree, and the exceptions heard and considered,—that while matters were thus pending, and when the Chancellor had the same under advisement for the purpose of making up his decree, Mitchell, the defendant, being indebted to other persons and insolvent or embarrassed, assigned this judgment, which he had against Lockwood, to Martin W. Bates, in trust for certain other creditors, they having judgments against him. It is not alleged that any valuable consideration was actually paid by the assignee, or that satisfaction was entered on the judgments for the payment of which the assignment was made. From all that appears it was nothing more than an assignment of a collateral security. This presents a case very different from that of a purchaser for valuable

consideration, who has actually paid money; and more especially so, when the assignee was the solicitor on behalf of the defendant, Mitchell, and consequently, after the final hearing, in 1823, fully acquainted with the whole subject. In the case of *Turton vs. Benson,* 1 *P. Wms.* 497, Benson's administratrix assigned Turton's bond in trust for the benefit of Benson's creditors. Lord Chancellor, Parker, declared that " as to Benson's pretended assignment of the " bond, it was upon no consideration; but if it were, yet " in truth it was not an assignment, but an agreement " only that the assignee should have all the fair and equit- " able advantage and benefit of the bond that the assignor " himself was entitled to, and if nothing was due, nothing " could be assigned over." The Lord Chancellor further said, " as to what had been urged, that the creditors of " Benson were numerous and in danger of losing their " debts through a deficiency of assets, that would be of no " weight; for still the creditors of Benson must be paid " out of Benson's estate, and not out of the estate of " another man." This case in Peere Williams I have adverted to as fully answering the suggestion made by defendant's counsel, that the assignment in the present case was for a valuable consideration, and that if it be not sustained, the creditors for whose use it was made, will lose their debts. The remark made by the Lord Chancellor is founded upon the clearest principles of equity and justice.

It is admitted that, at law, there cannot be a set off under our Act of Assembly, except in cases of mutual debts; but where there are, upon accounts, mutual credits between two parties, though they cannot be set off at law, yet it is the common ground of a bill in equity. This was the opinion of Lord Chancellor Loughborough, in the case of *James vs. Kynnier,* 5 *Ves. Jr.* 108, supposing no bankruptcy had taken place. In the case of *French, assignee, vs. Fenn,* 3 *Doug. R.* 257, being a case of bankruptcy, the

set off was allowed, upon the ground of mutual credit. It was an action of assumpsit, brought against the defendant for money had and received to the use of the plaintiffs, as assignees of Cox. The defendant pleaded the general issue, *non-assumpsit,* and gave notice of set off. A verdict was found for the plaintiff, subject to the opinion of the Court on the following case, viz :

That on the 24th of January, 1778, Cox, Holford and Fenn, agreed to purchase a row of pearls for an advent- ure in trade, and that Fenn should advance the money. The agreement was as follows : " London, 24th January, " 1778, J. Cox, J. Holford and J. Fenn, purchased a row " of pearls of James L. Jenne, for £2050, including the " commission. The said sum was advanced by J. Fenn, " upon an agreement that profit and loss thereon should " be equally divided between them, in thirds ; in conse- " quence of which, we, the undersigned, do hereby agree to " pay two-thirds of the interest thereon, from the said 24th " of January, 1778, till the said row of pearls is sold."

In November, 1778, Cox became a bankrupt, after which the defendant sent the row of pearls to China, where it was sold for £6000, and the net proceeds being £5000, was remitted to the defendant. Cox, at the time of his bank- ruptcy, was indebted to the defendant in a much larger sum than a third of the profits of this adventure. The question for the consideration of the Court, therefore, was whether he was entitled to set off the sums owing to him from the bankrupt in bar of the action brought by the bankrupt's assignees for a third of the profits arising from the sale of the pearls. Lord Mansfield, said, " The Act " of Parliament is accurately drawn to avoid the injustice " that would be done,if the words were only mutual debts ; " and it, therefore, provides for mutual credit. In this case, " credit is given to the defendant for a row of pearls which " is to belong in thirds to three persons. As Fenn ad- " vanced the whole money, the other two were to pay

" him interest for their shares until the pearls were sold.
" There is no doubt but there was a mutual credit. Cox had
" trusted him with the pearls, and he had trusted Cox with
" other goods, which in all probability he would not have
" otherwise done.   This is the real justice of the case, if
" there had been no bankruptcy; and the bankruptcy
" ought not to alter the real justice of the case."

Upon a full consideration of all the cases, I am of opinion that the complainant is entitled to relief and to have the amounts due him, under the decree, set off against the sum due upon the judgment.

Let a decree be entered accordingly.