ANNA R. REED, Executrix of John Warner Reed, Deceased, *v.* THE CENTRAL NATIONAL BANK OF WILMINGTON, a corporation of the United States of America.

*(May* 4, 1936.)

HARRINGTON, RICHARDS and SPEAKMAN, J. J., sitting.

*John B. Jester* for plaintiff.

*Paul Leahy* (of Ward and Gray) for defendant.

Superior Court for New Castle County, Action of Assumpsit, No. 71, January Term, 1936.

HARRINGTON, J., delivering the opinion of the Court:

Colonel John Warner Reed died insolvent. At the time of his death he had $139.45 on general deposit to his credit in the Central National Bank of Wilmington, the defendant. He, also, owed that bank $200, represented by a note which was not due until about two weeks after his death. Some days before the note held by the bank became due, the executrix of Colonel Reed demanded payment of the deposit standing to his credit on the books of the bank; how that demand was made does not appear, but payment was refused, and shortly after the note had become due the bank credited that deposit on it and filed a claim with the executrix for the unpaid balance. Colonel Reed's executrix denied the bank's right to retain and credit his deposit on the note and shortly thereafter brought suit in a contract action, but solely for the recovery of the deposit; this appears from the statement of facts agreed on by the parties.

The defendant, the Central National Bank, contends:

1. That when a depositor becomes insolvent, all of his debts, though payable at a future date, are treated as though they were then due, even by a court of law. That when insolvency exists, a bank may, therefore, apply a deposit, standing to the credit of the insolvent depositor to his unmatured note; and that this is true, whether such depositor be living or dead.

2. That, in any event, the action of the bank, in

retaining and subsequently applying Colonel Reed's bank balance to his note, can be justified under the set-off statute; and that this is particularly true as his note was due when the suit was brought.

When money is deposited in a bank on general deposit, it becomes the property of the bank, and the relation between such bank and the depositor is merely that of debtor and creditor. *Laighton v. Brookline Trust Co.*, 225 *Mass.* 458, 114 *N. E.* 671, *L. R. A.* 1917C, 129; *People's National Bank v. Rhoades*, 5 *Boyce* (28 *Del.*) 65, 90 *A.* 409; *Graham v. National Bank of Smyrna*, 2 *W. W. Harr.* (32 *Del.*) 264, 122 *A.* 85; *Scammon v. Kimball*, 92 *U. S.* 362, 23 *L. Ed.* 483. Perhaps because of that fact, a bank, undoubtedly, has the right to apply a balance on general deposit to a matured note or other debt held by it against a depositor. *McDowell v. President, etc., of Bank of Wilmington & Brandywine*, 1 *Harr.* 369; *Morse on Banks and Banking* (6th Ed.), §§ 324, 326, 559.

So far as the maker of a note is concerned, this is merely a discretionary right on the part of the bank, and if it fails to collect its debt in that way that does not affect its subsequent right to collect it in some other appropriate manner. *Morse on Banks and Banking* (6th Ed.), *supra.*

A different rule applies, however, in equity when the rights of an endorser on such a note are involved. *McDowell v. President, etc., of Bank of Wilmington & Brandywine*, 1 *Harr.* 369; see, also, *Morse on Banks and Banking* (6th Ed.) 562, 563.

But as we have already intimated unless our present set-off statute changes that right certainly, so far as a court of law is concerned, a general balance can only be applied by a bank when its debt against the depositor is then due

and payable. *Jordan v. National Shoe, etc., Bank,* 74 *N. Y.* 467, 30 *Am. Rep.* 319; *Ellis v. First Nat. Bank,* 22 *R. I.* 565, 48 *A.* 936; *Morse on Banks and Banking* (*6th Ed.*), §§ 329, 561; 3 *R. C. L.* 593; 7 *C. J.* 565.

It is true that the defendant's attorney cites numerous cases, apparently decided by courts of law, which seem to hold that when insolvency exists a bank may apply a deposit to a note not then due. *Clark v. Lincoln Trust Co.,* 50 *R. I.* 493, 149 *A.* 592; *Conquest v. Broadway National Bank,* 134 *Tenn.* 17, 183 *S. W.* 160; *Laighton v. Brookline Trust Co.,* 225 *Mass.* 458, 114 *N. E.* 671, *L. R. A.* 1917*C,* 129; *Mich. on Banks and Banking* (*Per. Ed.*), § 116; 43 *A. L .R.* 1328, *note;* 3 *R. C. L.* 593, 35 *Ann. Cas.* 689; 7 *C. J.* 656; *Zane on Banks and Banking,* 230.

These cases are, however, apparently from states having no Court of Chancery and in which, perhaps because of that fact, equitable pleas of a broad nature seem to be permitted; but regardless of whether in this state insolvency alone, unaccompanied by any other facts affecting the equitable rights of the complainant, would even justify a court of equity in decreeing a set off (see *Small v. Collins,* 6 *Houst.* 273; *Lockwood v. Bates,* 1 *Del. Ch.* 435, 454, 12 *Am. Dec.* 121; 57 *C. J.* 364), it would seem that no such rule could be applied by a court of law.

In 5 *Mich. on Banks and Banking* (*Per. Ed.*), § 116, the author said: "The death of a depositor does not deprive a bank of its right to apply his deposit to the payment of his indebtedness although there may be debts outstanding against his estate of superior dignity to that due the bank, and it may plead such debt in off set to an action by the administrator." See, also, *Morse on Banks and Banking* (*6th Ed.*), § 340; *Jester and McDaniel v. Knotts, Adm'r,* 7 *Boyce* (30 *Del.*) 350, 57 *A.* 1094.

■ So far as courts of law are concerned, the right of set-off, though based on principles of right and justice, is wholly of statutory origin. *Woolley's Del. Pr.*, § 492; *Halsbury's Laws of England, Vol.* 25, *p.* 486, *note;* 34 *Harv. Law Rev.* 178; 57 *C. J.* 360.

· It seems that that doctrine was borrowed from the civil law, but however that may be equity recognized and enforced the right of set-off in some cases, even before the enactment of any statutory provision on the subject. *Jordan v. National Shoe, etc., Bank,* 74 *N. Y.* 467, 30 *Am. Rep.* 319; *Ex parte Steph.,* 11 *Vesey Jr.* 24; *Morse on Banks and Banking* (*6th Ed.*), § 329, *p.* 773; *Hals. Laws of Eng., Vol.* 13, *p.* 162, *Vol.* 25, *p.* 486, *note;* 8 *Bac. Abr.* 640; 2 *Kent's Com.* 472, *note;* 34 *Harv. Law Rev.* 179.

Lord Halsbury, in his *Laws of England* (*Vol.* 13, *p.* 162, *note*) quoting Lord Cottenham, in *Rawson v. Samuel, Craig & P.* 161, 178, said: "Equitable set-off exists in cases where the party seeking the benefit of it can show some equitable ground for being protected against his adversary's demand." He added, however, "Otherwise equity follows the statutory right at law." See, also, *Jordan v. National Shoe, etc., Bank,* 74 *N. Y.* 467, 30 *Am. Rep.* 319, *supra; Adair v. Newlin,* 11 *Del. Ch.* 242, 100 *A.* 792; *Small v. Collins,* 6 *Houst.* 273.

Applying these principles that there, undoubtedly, are cases where equity will set off a claim, which strictly speaking is not a mutual debt within the meaning of the usual set-off statute, but is rather in the nature of a mutual credit, must be conceded. *Lockwood v. Bates,* 1 *Del. Ch.* 435, 454, 12 *Am. Dec.* 121; *Small v. Collins,* 6 *Houst.* 273; *James v. Kynnier,* 5 *Vesey Jr.* 108, 31 *Eng. Repr.* 496; *Rose v. Hart,* 129 *Eng. Repr.* 477.

There was an earlier statute relating to bankruptcy

[*4th* and *5th Anne, Chap.* 4 (1705) ; see, also, 5 *Geo. I, Chap.* 24 (1718) and 5 *Geo. II, Chap.* 30 (1732)], but the earliest general set-off statute in England was 2 *Geo. II, Chap.* 22 (1729). This was merely a temporary enactment, but it was re-enacted and made permanent by 8 *Geo. II, Chap.* 24 in 1735. *Donaldson v. Griffith,* 3 *W. W. Harr.* (33 *Del.*) 118, 131 *A.* 320; *Hals. Laws of England, Vol.* 25, *pp.* 485, 486, note. These acts did not apply here, but in the year 1740 (13 *Geo. II*) our Legislature passed an act entitled *"An Act about defalcation,"* which related to the same subject.

It provided "for the avoiding numerous suits at law within this government, *Section* 1 \* \* \* If two men dealing together be indebted to each other upon bonds, bills, bargains and the like, the defendant may in his plea or answer to the plaintiff's declaration acknowledge the debt which the plaintiff demands from him and defalk what the plaintiff is indebted to him, the said defendant." *Laws of Del., Vol.* 1, *page* 162.

This statute made no express provision for a set-off in actions to which executors or administrators were parties. In this respect, it differed from 2 *George II, Chap.* 22, § 13, and 8 *George II, Chap.* 24, § 4. See *Hals. Laws of Eng., Vol.* 25, *p.* 486, *note;* 8 *Bac. Abr.* 640. It, however, was still in force in 1829 and was not changed until many years later, probably in 1852. *Code* 1829, *p.* 111; *Donaldson v. Griffith,* 3 *W. W. Harr.* (33 *Del.*) 118, 131 *A.* 320.

The Legislature then provided:

1. "Mutual debts between parties to an action due at the time of action brought, in the same right, and being for a sum liquidated, or which can be ascertained by calculation, may be the subject of set-off in such action." *Code* 1852, § 2327, *p.* 380.

2. "If either party sue, or be sued, as executor or administrator,

and there are mutual debts between his testator, or intestate, and the other party, one debt may be set off against the other." *Code* 1852, § 2328, *p.* 380.

Precisely the same language was, also, used in *Sections* 4188 and 4189 of the *Revised Code of* 1915. Both of these *sections* were, however, materially changed in 1931 by *Chapter* 264 of *Volume* 37, *Laws of Delaware.*

As so changed, *Section* 4189 of the *Code* now provides:

"If either party sue, or be sued, as an executor or administrator, and there are mutual debts or credits between his testator, or intestate, and the other party, one debt or credit may be set off against the other."

See *State to Use of Stockley, Connoway's Adm'r, v. Connoway,* 2 *Houst.* 206.

So under the present statute, mutual credits, as well as mutual debts, may be set off in an action at law where an executor or administrator is a party to the action.

Perhaps we might state that *Section* 4188 of the *Revised Code of* 1915 (as amended), also, in part, provides:

"Mutual debts or credits between parties to an action, due, at the time of action brought, in the same right, and being for a sum liquidated, or which can be ascertained by calculation, may be the subject of set-off in such action and a verdict may be rendered in favor of either party for the balance found to be due and judgment entered thereon."

Set-off provisions relating to mutual credits, as well as to mutual debts, were, also, incorporated in the English Bankruptcy statutes above referred to, and very similar language appears in *Section* 68a of the *Federal Bankruptcy Act of* 1898, *U. S. C., title* 11, § 108 (*a*), 11 *U. S. C. A.,* § 108 (*a*) ; and, likewise, appeared in earlier Federal Bankruptcy Statutes. *Hals. Laws of Eng., Vol.* 25, *p.* 486; *Reming. on Bankr.,* § 1451.

From the language above quoted it appears that since 1852, the words "mutual debts" in the set-off statute relating to living persons, have been accompanied by the words "due at the time of action brought." See *Edwards v. Temple's Garnishee, 2 Harr.* 322.

That express provision has never appeared in the other section of our statute and did not appear in the English statutes of 2 and 8 *Geo. II*, but in those statutes the words "mutual debts" were construed to have that meaning. *Jordan v. National Shoe, etc., Bank,* 74 *N. Y.* 467, 30 *Am. Rep.* 319; *Braithwaite v. Coleman,* 4 *Nev. & M.* 654; 8 *Bac. Abr.* 647.

It must be conceded that the words "mutual credits" have a broader meaning than the words "mutual debts." *Lockwood v. Bates,* 1 *Del. Ch.* 435, 454, 12 *Am. Dec.* 121; *French, Assignee, v. Fenn,* 3 *Doug.* 257; *Morgan v. Wordell,* 178 *Mass.* 350, 59 *N. E.* 1037, 55 *L. R. A.* 33; *Atkinson v. Elliott,* 7 *T. R.* 378; *Rose v. Hart,* 129 *Eng. Repr.* 477; *Catlin v. Foster,* 5 *Fed. Cas.* 303, *No.* 2,519; *James v. Kynnier,* 5 *Vesey, Jr.* 108, 31 *Eng. Repr.* 496; 1 *Bac. Abr.* 810, *note;* 2 *Bouv. Law Dict.* (*Rawles* 3rd *Rev.*) 2284; 57 *C. J.* 364.

In 2 *Bouvier's Law Dictionary* (*Rawles* 3rd *Rev.*) 2284, *supra,* the author, in discussing the meaning of the words "mutual credits," said:

"Credits given by two persons mutually, i. e., each giving credit to the other. It is a more extensive phrase than mutual debts. Thus the sum credited by one may be due at once, that by the other payable in future; yet the credits are mutual though the transaction would not come within the meaning of mutual debts."

In 1 *Bacon's Abridgement* 810, *note, supra,* the author also said:

"There is a distinction between mutual debts and mutual credits, the former term being more limited than the latter in its signification.

Where a person was indebted to the bankrupt in a sum payable at a future day, and the bankrupt owed him a small sum, which was not then due, this, though in strictness not a mutual debt, was holden to be a mutual credit."

In *Rose et al. v. Hart, Assignees in Bankruptcy* (1818), 129 *Eng. Repr.* 477, *supra,* which was an action of trover at law, the court, after considering the earlier English cases, among other things, said:

"So in all the other cases which have occurred upon this subject it will be found that that which has been allowed as a mutual credit has always been of such a nature as must terminate in a cross debt. To this extent we think the statute (the *bankruptcy act of* 5 *Geo. II, Chap.* 30) may be carried but no farther."

In *Lockwood v. Bates,* 1 *Del. Ch.* 435, 454, 12 *Am. Dec.* 121, *supra,* the Chancellor, quoting from *Lord Mansfield* in *French, Assignee in Bankruptcy, v. Fenn,* 3 *Doug.* 257, also said:

"The Act of Parliament is accurately drawn to avoid the injustice that would be done if the words were only mutual debts; and it, therefore, provides for mutual credits."

In *Adair v. Newlin,* 11 *Del. Ch.* 242, 100 *A.* 792, 794, it is true that the court said:

" 'The mere existence of cross-demands will not be sufficient to justify a set-off in equity.' There must be a mutual credit, or, as Judge Story says, 'a knowledge on both sides of an existing debt due to one party and a credit by the other party, founded upon and trusting to such debt as a means of discharging it.' "

*Small v. Collins (Err. App.),* 6 *Houst.* 273, laid down the same rule [see, also, *King v. King,* 9 *N. J. Eq.* 44; *U. S. Bung Mfg. Co. v. Armstrong (C. C.),* 34 *F.* 94; *Scott v. Armstrong (Farmers' & Merchants State Bank v. Armstrong,* 146 *U. S.* 499, 13 *S. Ct.* 148, 36 *L. Ed.* 1059] ; and, also, said that insolvency would make no difference in the application of it.

But these cases were decided by courts of equity and,

therefore, necessarily applied equitable principles which do not apply in a court of law when the statute permits mutual credits as well as mutual debts to be set off. See *Rose v. Hart,* 129 *Eng. Repr.* 477; *Frank, Trustee, v. Mercantile Nat. Bank,* 182 *N. Y.* 264, 74 *N. E.* 841, 108 *Am. St. Rep.* 805; *Edwards v. Temple's Garnishee,* 2 *Harr.* 322.

█ It is unnecessary for us to consider the meaning of the words "mutual credits" in *Section* 4188 of the *Revised Code of* 1915, as amended, when read in connection with the words "due at the time of action brought," which seem to apply to them, as well as to the words "mutual debts." But whatever they may mean in that *section,* the bank balance due Colonel Reed at the time of his death, and his note held by the defendant bank, though not then due, were mutual credits within the meaning of that term as used in *Section* 4189 of the *Revised Code of* 1915, as amended.

The bank was, therefore, within its rights when it applied that balance to the Colonel Reed note. At any rate, when this suit was brought the note was due, and the provision of the set-off statute, relating to mutual debts, applies. See *Jester and McDaniel v. Knotts, Adm'r,* 7 *Boyce* (30 *Del.*) 350, 57 *A.* 1094.

Judgment must, therefore, be entered for the defendant.