## Case No. 9,096.

MARKS et al. v. BARKER et al.

[1 Wash. C. C. 178.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1804.

BANKRUPTCY — ENDORSER FOR BANKRUPT — DEBT NOT YET DUE—RIGHT OF OFFSET—CONSIGNEE —OWNER'S LIEN—AFTER SALE.

1. No debt, but such as is due and owing at the time of the bankruptcy, can be proved under the commission; and, consequently, an endorser or acceptor of a bill of exchange, drawn by the bankrupt, who has not paid it before the bankruptcy, cannot prove the debt.

[Cited in Pogue v. Joyner, 6 Ark. 241.]

2. The acceptor or endorser of a bill of exchange, who pays the bill, after the bankruptcy of the drawer, may offset the same against the bankrupt's assignees; but, he must show the debt to be a subsisting one in him, at the time the action was brought; for this is a case of mutual credit, given before the bankruptcy, although the money was not paid until after.

[Cited in Re City Bank of Savings, Loan & Discount. Case No. 2,742; Catlin v. Foster, Id. 2,519; Ex parte Whiting, Id. 17,573.]

3. Set-off. Where it will be allowed, in relation to claims upon the bankrupt's estate, arising from transactions not completed, before the bankruptcy.

4. Whatever lien might have existed upon goods unsold, in the hands of a consignee, shipped to him upon a particular account, and under an agreement, which he has not kept; when these goods have been sold, the lien is at an end; and the proceeds of the goods will become the subject of mutual accounts, and of set-off between the parties.

Action of indebitatus assumpsit, for money had and received to use of bankrupts, and goods sold and delivered by them. Plea, non assumpsit, and notice to offset. The case was—Anthony & Pleasants, having shipped a cargo of tobacco and flour to John Waring, in Bristol, and intending to ship more; drew bills, as they were permitted to do, on Waring, for two-thirds the cost of those cargoes; which they got the defendants in Philadelphia, to endorse, and negotiate for them on the usual commission. One of the bills having returned protested; and, the defendants [Barker & Ansley,] entertaining apprehensions for the fate of the others; they requested Anthony to come on from Richmond, in Virginia, where his house was settled, to Philadelphia, on this business. He did so; and then the defendants insisted, that Anthony should give them security, to indemnify them against their endorsements on the bills drawn on Waring. This, An-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

thony declared he could not do; and, if it were insisted upon, his house would be obliged to stop. The defendants objected to this step, lest it should decide the fate of the bills, not then protested; and would, in other respects, be injurious not only to Anthony & Pleasants, but to the defendants. To prevent this measure, and, at the same time, to secure the defendants; they, on the 1st of April, 1802, committed to writing, but it was not signed, the following proposition, in substance, viz. that they would accept a bill, drawn by Anthony & Pleasants, on them, for 2000 dollars, in favour of H. Gilpin, on condition, that Anthony & Pleasants would ship them forty or fifty hogsheads of tobacco; and that Anthony & Pleasants should ship them other cargoes, which they would sell to the best advantage, and would accept their bills, for the amount to be drawn, on advice received by Anthony & Pleasants, that the cargoes had come to hand. Anthony; (who, having executed a release of any benefit by an increase of the funds, in consequence of this suit, was admitted as a witness,) deposed; that a parol agreement was made, that Anthony & Pleasants might draw on the defendants, on forwarding them bills of lading of the cargoes to be shipped them; and that no part of the proceeds were to be appropriated to the discharge of the European bills, drawn on Waring. At the time this negotiation was going on, and, to secure the defendants against their endorsements of the bills on Waring; Anthony, for his house, assigned over to the defendants the cargoes shipped to Waring, for securing the defendants as endorsers; and the balance to be for the benefit of Anthony & Pleasants. Anthony & Pleasants, accordingly, shipped to the defendants different cargoes of tobacco; but, having drawn upon them before they came to hand, those bills were protested. The cargoes of tobacco shipped to the defendants, were sold prior to the 27th July, 1802. On the 26th August, a commission of bankruptcy was taken out against Anthony & Pleasants, and an assignment made to the plaintiffs. The bills drawn on Waring were all protested, before the bankruptcy of Anthony & Pleasants. The defendants paid those protested bills after the bankruptcy. The cargoes in England, were sold for so much less than was calculated upon, as to induce Waring to protest so many of the bills drawn upon him, as to oblige the defendants to take them up, to a larger amount than the proceeds of the tobacco shipped to them, and which they did pay, after the bankruptcy of Anthony & Pleasants, but before the bringing of this suit.

It was contended by the plaintiffs' counsel that, from the evidence in the cause, it appeared, that the tobacco shipped to the defendants, was appropriated to a particular purpose; and, that the defendants had bound themselves not to make use of it,

to discharge any prior claims against Anthony & Pleasants, for which they were secured by the assignment. That this amounted to a waiver of their lien on those cargoes, and, consequently, of their right to offset those debts against this demand for the proceeds of the cargoes. They cited 2 Vern. 129; 2 W. Bl. 1269; 6 Term R. 258. On the other side it was insisted, that the contract was that which was reduced to writing; and circumstances were relied upon to discredit Anthony. That, at any rate, there was no evidence against the defendants of a waiver of their right to set off. That the fund provided in England, for the security of the defendants, having failed, they were not bound by their promise to Anthony & Pleasants, however strong it might be against them. Cases cited, 1 Term R. 285; 1 East, 98, 375; Cowp. 135; 3 East, 325.

The plaintiffs' counsel, when near concluding, started this point; that the defendants, not having paid the protested bill, on which they were endorsers, and which formed the mass of their claim, now attempted to be offset, until after the commission of bankruptcy, could not, under the bankrupt law, be entitled to set off those payments. He laid down the following propositions: 1st. That nothing but a subsisting debt, or a balance on a general account, or a liability to pay at all events, at the time of the bankruptcy, could be set off. 2d. That a debt depending upon a contingency, which does not happen until after the bankruptcy, cannot be set off. 3d. That no debt can be set off, which might not be proved under the commission. The conclusion from the premises is, that an endorser, who has not paid the bill before the bankruptcy, is only liable upon a contingency. He could not, in such case, prove under the commission, and consequently cannot set off. He cited Coke, Bank. Law, 565, 198, 201, 202; 1 Atk. 119; 8 Term R. 199; 3 Term R. 437; 4 Term R. 714.

THE COURT informed Mr. Dallas, the concluding counsel, that this was quite a new point, which the counsel who had opened, and argued on the part of the plaintiff, had never started; that this was an irregularity. But the point being important, the counsel for the defendant would be at liberty to discuss it.

Rawle and Lewis, for defendant, insisted that the credit having been given prior to the bankruptcy, it came within the 42d section of the bankrupt law [of 1800 (2 Stat. 33)], respecting offsets, and they cited Coke, Bank. Law, 579; Cowp. 251; 4 Term R. 211; 2 East, 227; 7 Term R. 378; Coke, Bank. Law, 572.

Upon the last point, WASHINGTON, Circuit Justice, delivered the opinion of the court. The proposition that no debt can be set off, which cannot be proved under the commission, if true, would settle this point. But it is not. The two questions depend on different sections of the law, very differently expressed. The cases cited to show what debts cannot be proved under the commission, go upon the words of the statute; which declare, that the certificate shall protect the bankrupt against all debts due and owing at the time of the bankruptcy. Consequently, the endorser or acceptor of a bill, who has not paid before the bankruptcy, cannot say that it was due, and owing from the bankrupt, at that time. But the question of offset depends upon the construction of the words, "mutual credit," in the section where they are found. I was at first struck with the propriety of giving them a limited construction, extending them no further than to debts payable at a future day; so as to assimilate, as nearly as possible, the case of offsets to that of debts, proveable under the commission; but, after reflecting that, by thus narrowing the construction, a man who had given credit, by endorsements or otherwise, in confidence of the security he possessed, in retaining what he might owe to that amount, I should take from him a plank on which he had intended to save himself; I thought I should be more likely to fulfil the intention of the legislature, by extending it to all cases of credit, given before the bankruptcy, though not to be terminated at a particular day. In this case, the defendants, by endorsing the bills of Anthony & Pleasants, in order to give them credit, did most certainly give credit to Anthony & Pleasants; and, therefore, the words "mutual credit," are broad enough to comprehend this case, if their meaning is not narrowed by construction. This section of our law is copied almost verbatim from the British statute.

The argument urged by the plaintiff's counsel, that if the section in question be construed to extend to this case, the estate of the bankrupt might be twice charged, viz. by the defendant and by the holder, is without foundation; because, clearly, before the offset is allowed, the defendant must show the debt to be subsisting in him alone. This is the doctrine in common cases of offset, that the debt attempted to be set off, must be a good and subsisting one, at the time the action is brought. The bankrupt law permits such an offset on a credit given before the bankruptcy, which, without this section, would not have been allowed. I consider the case of Smith v. Hodson, 4 Term R. 211, as no ways distinguishable from the present; because, in this case, the bills having been protested before the bankruptcy, the defendants, as endorsers, were as much the principal debtors, as the acceptor in the case cited; and in both, the bills were, at the time of the bankruptcy, in the hands of third persons. We are, therefore, of opinion, that the defendants are not deprived of the right of set-off, on account of their not having taken up the bills before the bankruptcy of Anthony & Pleasants.

WASHINGTON, Circuit Justice (after stating the facts, charged the jury). It is perfectly immaterial to this cause, whether the agreement of the 1st of April be such as the defendants contend it was, or such as is proved by Anthony; for except as to the time, at which Anthony & Pleasants were to be at liberty to draw, which is quite unimportant to the question in this cause, the two contracts are substantially the same; the declaration, which Anthony says was made by the defendants, that they would not appropriate the cargoes to be sent to them towards the European bills, was only expressing what necessarily resulted from the written promise, to appropriate them to another purpose, viz. to the taking up the bills which Anthony & Pleasants should draw on the defendants, to the amount of those cargoes. What, then, by this contract, were the defendants bound to do? To accept Anthony & Pleasants' bills, drawn upon them, either when the bills of lading for the tobacco were sent on, or on the arrival of the cargoes. But instead of this, those bills were protested. What then? The holders might possibly have sued the defendants, as acceptors, in consequence of their previous engagement to accept. But they protested the bills and returned them. Suppose Anthony & Pleasants had sued the defendants for a breach of their contract, in protesting their bills, having funds with which to take them up. They might have recovered damages, unless the defence now set up to justify their conduct, would have protected them. And most certainly, if the insufficiency of ·the funds assigned to the defendants, in Waring's hands, be made out, it would be a sufficient defence. Because that assignment was the consideration for the promise of the defendants; and if that failed, though without the default of Anthony & Pleasants, yet the defendants were thereby released from their promise. For what could have induced the defendants to agree to relinquish their lien, on future cargoes coming into their hands; but a belief that the indemnity they had received, against their prior engagements, was sufficient? This, I have no doubt, was the belief of all the parties at the time, but they were unfortunately mistaken. This, then, would have been the fate of such an action, as the one I have mentioned. But this is indebitatus assumpsit, for the value of the cargoes sold by the defendants. In answer to this, the defendants say, the bankrupts owe us more than you demand. Whatever construction may be given to the contract, it will not be pretended that the defendants, by agreeing not to appropriate the proceeds of the tobacco to the English bills, gave up their right to claim from Anthony & Pleasants, whatever sums of money they might be compelled to pay, on account of those bills. Now suppose Anthony & Pleasants were plaintiffs in this cause, and were defendants in a cross action to recover the amount of those protested bills, and judgments should be rendered on both actions. If the defendants' judgment exceeded that of Anthony & Pleasants, would not a court of chancery enjoin Anthony & Pleasants from proceeding on their judgment; particularly if it were stated that they would not, after receiving the defendants' money, be able to satisfy their judgment? Surely they would; and if so, the whole of the cause has dwindled down into a mere question of form; viz. whether the defendants shall be paid a demand, to which they are clearly entitled, in the way of a set-off, or a cross action, or an application to a court of chancery.

The plaintiffs' counsel have clearly been misled by applying the doctrine of lien to this case. When the defendants, by their agreement of the 1st of April, waived their lien on the tobacco, in consideration of a security for their engagements, on account of the English bills; they had another security, which they never waived, and that was, the personal responsibility of Anthony & Pleasants. Had Anthony & Pleasants, or the plaintiffs, brought trover and conversion for the tobacco, that being yet unsold; they might then have argued against the defendants' claim of lien, that it was waived. But the lien was gone by the sale, and the whole becomes now a question of personal responsibility, that is, to offset a debt admitted to be personally due, from Anthony & Pleasants, to the defendant, which debt never was given up, nor the right to set off expressly or impliedly waived.

The jury were out two or three days, and, on being called, the plaintiff suffered a nonsuit.

NOTE. During the trial, it was ruled, that what either of the bankrupts had acknowledged before bankruptcy, might be given in evidence against their assignees. An acknowledgment by the bankrupt, that he was indebted to the petitioning creditor, if made before suing out the commission, is good evidence to support it. 2 Esp. 592; N. P. Cas. 168. A man cannot be a witness to prove an act of bankruptcy, committed by himself; but his confession to a third person at the time, that he went out of the way to prevent an arrest, or to such like facts as are acts of bankruptcy, is admissible. 5 Term R. 512. Neither can a bankrupt be a witness, to prove the petitioning creditor's debt, or any other fact to support the commission: though he has a certificate. 2 H. Bl. 279. After his certificate is allowed, he may be a witness to any thing relating to the bankruptcy, except only to the ·act of bankruptcy (Id., note), though he releases (2 Strange, 829). The bankrupt is an admissible witness to explain a doubtful act, which may or may not be an act of bankruptcy; as whether an arrest, relied on as a concerted and fraudulent one, was so or not. 1 Esp. 287.

---

MARKS (DEPOSIT SAV. ASS'N v.). See Case No. 3,812.

MARKS (DISTRICT SAV. ASS'N v.). See Case No. 3,812.

MARKS (GREGORY v.). See Case No. 5,802.

MARKS (UNITED STATES v.). See Case No. 15,721.