## Case No. 2,519.

### CATLIN v. FOSTER.

[1 Sawy. 37;[1] 3 N. B. R. 540 (Quarto, 134); 3 Am. Law T. 134; 1 Am. Law T. Rep. Bankr. 192.]

Circuit Court, D. Oregon. Feb. 14, 1870.

BANKRUPT, EMPLOYMENT OF BY BAILEE — BAILEE ENTITLED TO CREDIT FOR SERVICES — MUTUAL DEBTS OR CREDITS — ORDER EXPUNGING CLAIM WILL NOT PREVENT ITS BEING PLEADED AS SET-OFF — CONDITIONS PRECEDENT TO ACTION BY CREDITOR.

1. Where a bailee of an insolvent debtor's goods, prior to the filing of a petition in bankruptcy against such debtor, employed him to assist in the sale and management of such goods: *Held*, that such employment was not illegal and that the bailee, as against the assignee in bankruptcy, was entitled to a credit for the amount paid therefor.

2. Where a bailee of an insolvent debtor's goods bestowed labor upon and about them, with a knowledge that such debtor had committed an act of bankruptcy in making such bailment, he is entitled to a credit for the value of such services as against the claim of the assignee in bankruptcy for such goods or their value.

[Cited in Re City Bank of Savings, Loan & Discount, Case No. 2,742; Re Cohn, Id. 2,966; Re Kurth, Id. 7,948.]

3. What is a case of mutual debts or credits within the meaning of section 20 of the bankrupt act [14 Stat. 526.]?

[Cited in Re Cohn, Case No. 2,966.]

4. An order expunging a claim against the estate of a bankrupt, is not such an adjudication thereof as prevents the creditor from pleading it as a set-off in an action by the assignee for a claim due such estate.

5. Semble, that the proof of a debt before the register and the rejection thereof by the district court, and the appeal therefrom to the circuit court, are conditions precedent to the creditor's right to maintain an action against the assignee for the recovery of his debt, but do not constitute or have the effect of an adjudication upon or against such claim.

[Cited in Thistle v. Hamilton, Case No. 13,-884.]

[At law. Action by John Catlin, assignee in bankruptcy, against John R. Foster.]

David Friedenrich, for plaintiff.
David Logan, for defendant.

DEADY, District Judge. This action was commenced July 26, 1869. The complaint states that on January 30, 1869, proceedings were commenced in the district court for this district, wherein said Randall & Sunderland

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

were duly adjudged bankrupts, and that plaintiff is the assignee of their estate; and that the defendant from January 9th to the 30th aforesaid, had the possession of all the goods and chattels of said bankrupts, and that during said period said defendant sold and disposed of parcels of said goods and received sums of money due said bankrupts, in all to the amount of $1,525.74 in gold coin, and paid out of said moneys on account of said bankrupts the sum of $926.99, retaining in his possession $597.74 of said moneys; and that afterward, on July 7, 1869, the plaintiff, as assignee aforesaid, demanded the same of the defendant, and that defendant refused to deliver said moneys or any part thereof to the plaintiff and still detains the same: Wherefore the plaintiff prays judgment for the delivery of said money with interest in coin for the use thereof at the rate of ten per centum per annum since April 9, 1869.

The answer of the defendant admits the allegations in the complaint, except that it denies that the defendant received any greater sum than $1,514.73, and avers that he paid out $979.49, and denies that he retained or still retains any greater sum than $535.24, received by him for goods sold or debts collected, belonging to said bankrupts.

The answer also contains two counter-claims which the defendant offers to set off against the demand of the plaintiff. The first for the sum of $250, which the defendant's attorneys demand of him for legal services rendered the defendant while conducting and settling the business of Randall & Sunderland. The second is also for the sum of $250 for and on account of the services of defendant in and about the management of the business of said Randall & Sunderland.

On motion, the first of these counter-claims was stricken out, as it did not appear that the defendant had ever paid the amount to the attorneys, but only that they claimed that he was liable for it.

To the second claim the plaintiff replied—denying knowledge of defendant's services and that they were worth $250.

Also, that on January 9, 1869, Randall and Sunderland made an assignment to the defendant of all their goods and effects, under which assignment the defendant took possession of all the property of said bankrupts; that said assignment was made in fraud of the bankrupt act and was the act of bankruptcy upon which said Randall & Sunderland were adjudged bankrupts; and that defendant colluded and conspired with said bankrupts in said fraudulent act, and in fraud of the bankrupt act managed the business of the bankrupts until enjoined therefrom by the proceedings in bankruptcy on January 30, 1869.

Also, that on April 1, 1869, the defendant filed a claim against the estate of the bankrupts for the same services; that afterwards certain creditors of said estate filed objec-

tions to said claim and such proceedings were had thereupon, before the register on default of the defendant, that an order of this court was made expunging said claim from the lists of claims upon the assignees' record, which order still remains in full force.

In pursuance of the stipulation of the parties, the cause was tried without the intervention of a jury on January 25th, and reserved for decision.

On the trial the defendant was called as a witness by the plaintiff. The only other evidence introduced was the assignment and the papers and proceedings in the bankruptcy case.

The evidence of the defendant supported his answer as to the amount of money received and paid out by him on account of the bankrupts, during his possession of the goods, and as nothing was shown or appears to the contrary, the fact must be found accordingly.

Of the money so paid out, as it appears from the account stated by the defendant, which is a part of his testimony, there was paid to Sunderland. one of the bankrupts, on January 30, the sums of $31.50 and $21. On account of these payments being made to the bankrupt, the plaintiff objects to their being treated and considered as payments on account of the estate.

According to the testimony of the defendant the payments were made under these circumstances. The business of the bankrupts consisted of a retail boot and shoe shop, and some manufacturing up-stairs, with a stock of about $14,000. The defendant had the general superintendence of the business and employed Sunderland to oversee the manufacturing at $75 per month. Paid him sums on tag from time to time, amounting in all to the sum of the two payments, which were afterwards charged on January 30, and that such wages were less than a person not interested could be obtained for.

The fact of the payments, is in effect, denied in the pleadings, but on the trial, the objection insisted upon was the illegality of paying money to one of the bankrupts. But I do not perceive that the employment of Sunderland on fair terms to do what was necessary and convenient to be done about the business, is in any way contrary to law or good morals. Indeed, I suppose the defendant might have returned to R. & S., at any time prior to the injunction, all the property he received from them under the void assignment. Much more, it seems to me, might he pay S. reasonable wages for work and labor performed about the business and property while under his charge. In any view of the matter, the defendant is only liable to the plaintiff for what came into his hands from or through the bankrupts, and was not returned to them or their representative—the assignee in bankruptcy. The question is, was the payment or delivery of

the $52.50 actually made to S. prior to the service of the injunction upon the defendant on January 30th, or not. If made after the service of the injunction—being in such case made in violation of it—I suppose it would be wrongful and the defendant would still be liable for the amount.

But, as has been suggested, the fact of the payments having been made as alleged, was not seriously contested on the trial. The testimony of the defendant is direct and positive to that effect, and it must be considered proven. This shows that the defendant has only $532.24 in his hands belonging to the estate of R. & S.

Is he entitled to set off his claim for services against a like amount of this sum?

The plaintiff's objection to the allowance of this set-off has been stated in his replication. From the evidence it appears that the defendant went into possession and control of the goods and business of R. & S. on January 10, 1869, under an assignment to himself, which was afterward, namely, on February 27th, adjudged void by this court, as being a fraud upon the bankrupt act, and an act of bankruptcy, and that he continued in such possession and control, and managed and conducted said property and business under said assignment, until enjoined by this court, on January 30, thereafter.

As to the alleged conspiracy and collusion between the defendant and R. and S., there is no direct proof. But from the circumstances shown the inference is reasonable that the defendant accepted the assignment and went into possession under it with a knowledge of the facts which, in contemplation of law, made such assignment fraudulent and an act of bankruptcy—namely, that R. and S. were insolvent and were by that means attempting to dispose of their property with intent to defeat and delay the operation of the bankrupt act.

On account of this knowledge the plaintiff claims that the defendant is not entitled to anything for his services under this illegal assignment; and that if he is, he should be required to prove his debt and take his pro rata with the other creditors. and not receive his pay in full by being allowed it as a set-off against the money of the estate in his hands.

The questions made by the objection of the plaintiff are not free from doubt.

By section 20 of the bankrupt act it is provided: "That in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated and one debt set off against the other and the balance only shall be allowed or paid, but no set-off shall be allowed of a claim in its nature not provable against the estate; provided, that no set-off shall be allowed in favor of any debtor to the bankrupt of a claim purchased by or transferred to him after the filing of the petition."

This is the only provision in the bankrupt

act touching the subject of set-off, and it is substantially the same as that contained in 6 Geo. IV. c. 16, § 50; but the English act further provides that such set-off may be made "notwithstanding any prior act of bankruptcy committed by the bankrupt before the credit given or debt contracted by him. * * * ; provided, that the person claiming the benefit of such set-off, had not, when such credit was given, notice of an act of bankruptcy by such bankrupt committed."

But for this proviso, it seems to have been holden in the English courts, that a debtor to a bankrupt could only be called upon to pay the balance after deducting what the bankrupt owed him, whether the credit was given to such bankrupt after notice of an act of bankruptcy committed by him or not. 1 Bac. Abr. 647.

This proviso not being in our act, nor any equivalent of it in legal effect, I conclude upon this authority, and indeed upon general principles, that although the defendant had notice of the act of bankruptcy committed by R. and S. when he rendered the service, he is entitled to set off the value of the same against what he owes them or their assignee, provided, the transaction amounts to a case of mutual credit between the parties, and the defendant's "claim in its nature is provable against the estate."

The term "mutual credits" in the bankrupt acts is more comprehensive than the term "mutual debts" in the statutes of set-off. The term "credit" is synonymous with "trust," and the trust or credit need not be of money on both sides, but if one party entrusts the other with goods or value it will be a case of mutual credit. 7 Bac. Abr. 170.

By section 42 of the bankrupt act of April 4, 1800 [2 Stat. 33], when a mutual credit was given before a party became bankrupt a set-off was allowed between the parties. Under this act it was decided that where the acceptor of a bill of exchange paid it after bankruptcy of the drawer, he might set off the amount of the same in an action by the assignee of the drawer for the value of certain goods consigned to the acceptor after the acceptance, and by him converted into money before the bankruptcy. This was held to be a case of mutual credit before the bankruptcy, although the defendant did not pay the debt set off until after the bankruptcy; and although under that act the debts, for that reason, could not have been proved against the estate. Marks v. Barker [Case No. 9,096].

In the case of Rose v. Hart. 8 Taunt. 499, cited 7 Bac. Abr. 650, it was ruled that where cloth was deposited with a fuller to dress by a party who afterwards became bankrupt, that there was a case of mutual credit to the value of the services for dressing the cloth, but not for a general balance due from the bankrupt; and in that case the general rule was laid down that the credits intended by the act were only such "as must

in their very nature terminate in cross debts; as where a debt is due from one party and credit given by him on the other, for a sum of money payable at a future day and which will then become a debt; or when there is a debt on one side and a delivery of property with directions to turn it into money on the other; but where there is a mere deposit of property, without authority to turn it into money, no debt can ever arise out of it, and therefore it is not a credit within the meaning of the statute."

Within the rule laid down by these authorities there can be no doubt but that this was a case of mutual credit—at least to the value of the defendant's services. The defendant received the goods and accounts and undertook in the course of the business to convert them into money. His skill and labor in this respect have some value. R. & S. credited—trusted—him with the property and with the money he might realize from it, and the defendant credited them for his services—yet to be rendered. Therefore the credits were mutual—and were also such credits as must result in cross debts.

The debt of the defendant is also provable under the act. Section 9 provides: "That all debts due and payable from the bankrupt, at the time of the adjudication in bankruptcy, and all debts then existing but not payable until a future day, a rebate of interest being made when no interest was payable by the terms of the contract, may be proved against the estate of the bankrupt."

In the case under consideration the adjudication was made on February 27th, and on January 30th, the debt due the defendant for his services was both due and payable; and if it had then only existed, but been payable at a future day, would still have been provable.

What is the value of the services? In his answer the defendant claims that they are worth $250 in coin. On April 1, 1869, he swore to the proof of debt before the register for these same services, in which he stated that R. & S. were justly indebted to him on that account "in the sum of $125 * * * for labor and services * * * from January 9th, 1869 to January 30th, at the rate of $200 per month in legal tender." At that time $125 in currency was about equal to $100 in coin. On the trial the defendant being asked by his counsel if $250 in coin was a reasonable compensation for his services, did not answer yea or nay, but said—"I don't think it very extravagant."

The service was a general superintendence of a retail boot and shoe shop for twenty days, with the assistance of Sunderland, one of the former proprietors and assignors.

I think $5 per day in coin a fair compensation. That is what the defendant estimated the value of his services at, in his proof of debt before the register last April, and no reason is shown for the increase of 150 per centum since that time.

Allowing the defendant a set-off of $100 in coin and deducting that sum from the debt due the plaintiff, leaves the sum of $423.24. Add to this interest on the same since July 7—seven months—makes $458.88—which is the sum due the plaintiff in coin.

But the plaintiff also objects to the allowance of this set-off, on the ground of an adverse prior adjudication as set forth in his replication.

The facts concerning the matter are these: On April 1, 1869, the defendant proved a debt for these services of the sum of $125 in legal tender. On objection by some of the creditors, and a motion to expunge the claim from the list of proven debts, the matter was referred by the court to the register. In the meantime, it may be presumed that the defendant, acting upon the advice of his counsel, concluded not to press his claim to payment by the assignee, but to rely upon having it allowed in full as a set-off against the sum then in his hands belonging to the estate —at least he did not appear before the register, but allowed the matter to go by default. Thereupon the register reported as a conclusion of fact that said claim was for services rendered under a fraudulent and void deed of assignment to the defendant, and as a conclusion of law that it ought not to be allowed. Upon motion, and without argument, there being no opposition, on August 16, this court confirmed this report and made an order expunging the claim from the list of debts. There the matter rested until the plaintiff brought this action, when the defendant pleaded the claim as a set-off.

Before proceeding to consider whether that order amounts to a final judgment against the claim of the defendant, it is proper to state, that the conclusion of the register against the legality of the claim was predicated upon the case of Leavitt v. Yates, 4 Edw. Ch. 205, cited in 5 Abb. Dig. 273, as deciding: That where a trust deed is pronounced void, as being contrary to law, the trustee cannot be allowed any compensation for services under it. Upon the strength of this authority, this court made the order of August 16, rejecting the claim. I now think that order was erroneous, and upon examination of the original report of the case of Leavitt v. Yates, I find that it does not decide any such thing as stated in the digest. The vice chancellor refused to allow the trustees the salary provided in the void trust deed, but did allow the necessary expense of taking care of and managing the property, while in the hands of the trustees.

These services were rendered by the defendant at the request of R. & S., before the petition filed in bankruptcy, and unless there is some established rule of law or positive statute prohibiting the payment or allowance of such a claim, I cannot now see upon what ground the right to have it allowed as a set-off is to be denied. If the defendant had notice of the act of bankruptcy—

as I presume he had—under the bankrupt act of 6 Geo. IV., the claim could neither have been proved against the estate nor allowed as a set-off in an action by the assignee; but there is no such provision in the American act, and the court must administer the law as it finds it.

I have come to the conclusion, that the order rejecting the claim of the defendant, is not such an adjudication as prevents the defendant from pleading it as a set-off in this action. The provisions of the bankrupt act bearing upon the question, are substantially as follows:

Section 22 [14 Stat. 527] provides for each creditor's making proof of his debt; and presenting the same to the assignee; it also gives the district court power "to reject all claims not duly proved, or where the proof shows the claim to have been founded in fraud, illegality, or mistake." Section 8 gives the right of appeal from the district to the circuit court, to "any supposed creditor whose claim is wholly or in part rejected." Section 24 enacts in effect that such supposed creditor, upon entering such appeal in the circuit court, shall file a pleading as plaintiff in an action at law containing a statement of his claim, and thereafter the controversy shall proceed to determination as an ordinary action at law.

Taken together, these provisions of the act amount to this, and nothing more:

A creditor cannot demand payment of his debt until he makes and presents to the assignee, the proper proof thereof. This provision is analogous in purpose, and proceeding to the probate of debts against the estate of a decedent, before being presented to, or allowed by the administrator. When this is done, parties interested may object to the claim, and the court—the district judge, without a jury, in a summary manner—may reject the claim, as not being duly proved, or as being founded in fraud, illegality, or mistake. Then, and not before, the supposed creditor may bring an action in the circuit court against the assignee, and have his right to payment regularly tried. But this action can only be maintained by the creditor first taking an appeal from the order rejecting his claim. This appeal must be taken within a limited time, in a particular manner, and to a particular court. The right to sue the assignee is postponed and limited to the happening and performance of these precedent circumstances and conditions. But they are not adjudications, but only proceedings preliminary to adjudication. But suppose the assignee to bring an action upon a demand due the bankrupt, cannot the defendant plead a set-off to more or less of such demand, although the same has not been proved and presented to the assignee, and rejected by the judge, and appeal taken to the circuit court? It seems to me that he can. The cross-demand of the defendant in such case is proved on the trial, or it will not be allowed.

The case of Marks v. Barker, supra, is an

instance in point where a party was entitled under the bankrupt act of 1800, to be allowed a claim as a set-off, which, for a technical reason, he could not have maintained an action to recover.

In this case, the defendant not having brought his action in the circuit court within the term prescribed after the rejection of his claim, has lost his right to maintain a suit upon it: but, notwithstanding this, I think the better conclusion is that he may still plead it as a set-off, by way of defense to an action by the assignee. On the other hand, it may be said that a party who elects to prove and obtain his demand in the mode prescribed in sections 22, 24 and 8, must pursue that mode to the end, and if he fails or neglects to do so, cannot afterwards have the same demand allowed as a set-off. Not that the order of rejection is an adjudication between the parties in any proper sense of that term, but that the party having elected to obtain his demand in that way, is precluded from litigating it in any other. There is force in this argument. On this point I am not confident that my conclusion is the proper one, and the question may be considered an open one in this court, if parties wish to be heard upon it in any case that may arise hereafter.

The set-off of the defendant to the amount of $100 in coin will be allowed, and the plaintiff must have judgment for $458.88 in coin, with costs and expenses of the action.