In re FRAZIN et al.

In re MORRIS.

(Circuit Court of Appeals, Second Circuit. December 9, 1912.)

No. 86.

**1. BANKRUPTCY (§ 161\*)—PREFERENCES—DETERMINATION.**
Where a note of bankrupts payable at a bank was presented to the bank on the date of its maturity for payment, and was duly certified, and subsequently paid by the bank, the time of certification is to be taken as the time of payment in determining whether the payment was preferential.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.\*]

**2. BANKRUPTCY (§ 340\*)—PREFERENCES—BURDEN OF PROOF.**
On a petition of a trustee in bankruptcy to expunge the claim of a creditor on the ground that it had received a preference, the burden is on the trustee to prove that the preferential payment was made after the creditor received information of the insolvency of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.\*]

**3. BANKRUPTCY (§ 340\*)—PREFERENCES—SUFFICIENCY OF EVIDENCE.**
On a petition by a trustee in bankruptcy to expunge a creditor's claim on the ground that he had received a preference, evidence *held* insufficient to show that the creditor received the preferential payment after receiving information of the bankrupt's insolvency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.\*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York; Charles M. Hough, Judge.

Petition by Robert C. Morris, as trustee in bankruptcy, to revise an order denying a petition to expunge the claim of Weichert & Gardiner, a corporation, against Louis Frazin and another, bankrupts. Order affirmed.

See, also, 183 Fed. 28, 105 C. C. A. 320, 33 L. R. A. (N. S.) 745.

This cause comes here on petition to revise an order of the District Court, Southern District of New York, denying a petition of the trustee to expunge the claim of the corporation Weichert & Gardiner, a creditor of the bankrupts, for $28,493.63. The objection of the trustee to the claim is based upon the contention that within four months preceding the filing of the petition a preferential payment was made by the bankrupts to Weichert & Gardiner, and that its claim should be expunged, unless the amount of such payment be returned to the estate.

G. B. Plante, of New York City, N. Y., for petitioner.

J. T. Smith, of New York City, N. Y., for respondents.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

. LACOMBE, Circuit Judge (after stating the facts as above). [1] Weichert & Gardiner, hereinafter called the corporation, had been dealing with the bankrupts for some time; the bankrupts were indebted to it on February 1, 1909, on open account, in the amount of $28,493.63. In October, 1908, the bankrupts had given the corporation a note for $5,075.82, payable on February 1, 1909, at the Second National Bank. This note had been discounted by the corporation with the Nassau Trust Company. At some time on Monday, February 1, 1909, the day of the maturity of said note, it was presented to the bank by the trust company, and was thereupon duly certified and subsequently paid by the bank. The referee and the District Court held correctly that for the purposes of deciding whether or not this was a preferential payment the time of certification is to be taken as the time of payment.

[2] About the middle of the day on February 1st Weichert, president of the corporation, had various conversations with one of the bankrupts and others, including Simonson, an officer of the bank, as to the financial condition of the firm. The testimony puts the time of these conversations as extending from noon to about 2 o'clock. It is contended that the information given to the corporation in the course of these interviews was such that it must be held to have had reasonable cause to believe that the firm was insolvent. This is disputed, but we need not discuss that question. We may assume that, if it were shown that the note was certified after the corporation received the information which it did receive, a preferential payment would be established. The important question in the case is whether the note was certified before or after the corporation was informed of financial trouble, and the burden of proving that it was certified after 12 o'clock noon, which is the hour when the interviews began, rests on the petitioner.

[3] The paying teller and a clerk in his department who recorded the certification in the book were called, and both testified that it was impossible to tell whether the certification was in the morning or in the afternoon. Neither of them had any recollection of the particular transaction. One of them said that his "idea would be" from looking at the item, which was in black ink and written by the other, that it was in the afternoon, because generally in the morning he made such entries himself and made them in red ink. The other bank witness

said that "he should judge it was in the morning," because the entry was so near the top of the page.

Petitioner undertook to supplement this by showing other circumstances. The firm's balance with the bank at the opening of business was $2,142.37. The only deposit made that day was $10,000, cash received from the various branch stores of the firm, being returns from their sales of the day before. It was usual to deposit such receipts from the branch stores in the morning, but on this day the deposit was held back till after the interview with the bank had taken place, and the firm understood they were to get some extension for payment of a note, due that day, which the bank held. The teller testified that he never overcertified, and that with only $2,142 to the credit of the firm he would not have certified their check or note for $5,075. It is contended that this shows that the certification must have been made after the deposit; that is, after the interviews.

We do not find the testimony persuasive to that conclusion for these reasons. When Weichert was first informed by Frazin as to the situation, he telephoned to his own office to know the condition of the firm's account with the corporation. Learning of the $5,075 note, he gave instructions to have a check of the corporation for that amount drawn and sent to the Nassau Trust Company with which the note had been discounted, so that, if payment of the note were refused at the Second National, the indorser's check would be with the Trust Company to take it up. When Weichert went to the interview with Simonson at the latter's downtown office he told him of this note, and asked if it had been paid. Thereupon Simonson stepped to the telephone, and, when he returned, he said, "Your note was paid." This was between 1 and 2 p. m. The cashier of the corporation, Ralston, testified that he took its check to the Nassau Trust Company about 10 minutes to 3, in order to take up the note, but upon inquiry there he was informed that the note had been paid, whereupon he took the check back with him and canceled it. These witnesses evidently used the word "paid" as the equivalent of "certified." Finally the man who actually made the $10,000 deposit with the Second National Bank testified positively that he did not deposit it until about 4 p. m. If this testimony be credible, and we see no reason to doubt it, the certification was made irrespective of the deposit, and there is nothing to show that it was made after 12 o'clock.

Petitioner contends that this testimony should be outweighed by the presumption that the certifying officers of national banks always perform their duty. We attach no weight to the suggestion that, to affirm, we must hold the teller who certified to be a "criminal." Whether overcertification be a criminal act, a proposition which we are not to be understood as assenting to, certainly such affirmance is consonant with an entire absence of criminal intent on the part of the teller who certified. He depends and necessarily must depend on the reports of others. His assistant goes to the bookkeeper and asks him the amount of the customer's balance, and accepts his statement of such balance. It is quite conceivable that, like all other human machines, even a bank bookkeeper may make a mistake, may look at

figures in his book, and state that a balance is $12,421, instead of $1,242.10. It may not be likely, but it is certainly not impossible, and, if its possibility be accepted, the presumption that a bank teller could not overcertify on a particular note, because it would be criminal to do so, is not such an overwhelming one as to wipe out affirmative testimony to the effect that in a single instance he did so.

The order is affirmed.