## HALF MOON FRUIT & PRODUCE CO. v. FLOYD.

### No. 6744.

Circuit Court of Appeals, Ninth Circuit.

Aug. 15, 1932.

Dreher & McClellan and Reuben G. Hunt, both of San Francisco, Cal., for appellant.

Ernest J. Torregano and Charles M. Stark, both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

WILBUR, Circuit Judge.

Appellant filed a claim for $51,101.53 in the matter of the bankruptcy of E. C. Bauman. The trustee in bankruptcy objected to the allowance of the claim unless and until the claimant should relinquish an alleged preference of $10,551.45 which it had received by the sale of 75 cars of melons belonging to the bankrupt and consigned to the appellant for sale. The referee sustained the trustee's objections and upon appeal from this determination the trial court sustained the referee. From this decision claimant takes this appeal.

The principal point presented by the record is the question as to whether or not the claimant was entitled to apply the proceeds of the sale of the 75 cars of melons on the indebtedness due to it by the bankrupt. The petition for involuntary bankruptcy was filed November 25, 1929. The referee in bankruptcy found that on and after September 30, 1929, the bankrupt was insolvent and known to be insolvent by the claimant, but that previous to that time the claimant was unaware of the insolvency of the bankrupt. Consequently, in the view of the referee, if the transfer constituting the preference occurred at the time of the sale of the melons and the application of the proceeds thereof to claimant's demand, the application of the amount to the indebtedness constituted a preference under the bankruptcy law; whereas, if the transfer occurred at the time the cars of melons were consigned to the claimant for sale, there was no voidable preference because even if the bankrupt were insolvent at that time the claimant was not aware thereof.

The trial court sustained the referee upon a somewhat different theory, holding that under all the facts and circumstances the claimant was entitled to an equitable lien upon the melons upon their consignment to it as a factor for sale and consequently the

date of the preference, if any, was the time of such consignment, thus differing from the referee. The trial court further held that, inasmuch as the claimant caused an attachment suit to be brought by its assignee for collection, under the law of California the claimant thereby waived its lien, and that the claimant was estopped from asserting such lien. The trial court stated: "The referee's conclusions that the transaction amounted to a preference is correct but not on the ground that a valid lien did not originally exist, but on the ground that claimant is estopped from asserting the lien." Upon this basis the trial court concluded that the "preferences arose as and when the proceeds were received." The conclusion of the trial court as to the existence of a lien upon the melons in question is predicated upon sections 2026 and 3053 of the Civil Code of California providing for a factor's lien. The trial court also held, "In the absence of such a statutory lien, an equitable lien in that behalf would exist," citing In re Interborough Consol. Corp. (C. C. A.) 288 F. 334, 32 A. L. R. 932. The conclusion that this lien was waived by the levy of attachment is based upon the requirement of the California Code of Civil Procedure (section 537 et seq.) that in order to procure a writ of attachment plaintiff must make an affidavit that the claim sued upon is not secured by mortgage or lien upon real or personal property, citing certain decisions of the Supreme Court of California (Wingard v. Banning, 39 Cal. 543; Gault v. Wiens, 32 Cal. App. 1, 3, 161 P. 996; and Latta v. Tutton, 122 Cal. 279, 283, 54 P. 844, 68 Am. St. Rep. 30), holding that a creditor, by making such an affidavit to secure a writ of attachment, thereby waived any lien which he might theretofore have asserted. The statement made by the Supreme Court of California in Wingard v. Banning, supra, is quoted as requiring this conclusion: "Having obtained the attachment on the faith that there was no lien, every consideration of equity and fair dealing, and a due regard to the good faith which the law exacts of litigants, demand that he should be estopped from afterwards asserting the contrary."

The trial court arrived at its conclusion with some reluctance, stating: "Here a mistake in remedy under the state law results in a loss of lien. * * * I cannot help but feel that the result in this case is harsh, but the court is without power to absolve claimant from its mistake."

The appellant apparently concedes the force of these decisions and the correctness of the decision of the trial court upon that subject, and, for that reason, perhaps we need give no further consideration to this question. Appellant's main contentions are that the transfer creating a preference occurred at the time of the consignment of the melons to it and not at the time the melons were sold, and the proceeds therefrom applied to the indebtedness due to it; consequently, that the preference occurred at a time when the appellant was unaware of the insolvency of the bankrupt in event he was so insolvent at that time. The other proposition is that under the bankruptcy law the creditor was entitled to set off as against the amount due it, the value of the melons it held for sale, and the situation thus existing constituted a mutual account within the meaning of the Bankruptcy Act which justified or required set-off. Before discussing these last propositions a more detailed statement of the facts is advisable and will be made as briefly as may be.

The appellant is a copartnership engaged in the business of commission merchants at San Francisco. For about ten years before the institution of the bankruptcy proceedings the partnership had made seasonal advances to the bankrupt to enable him to plant, grow, mature, and harvest his crops. The claimant had not required security by way of chattel mortgage, but it was agreed that the bankrupt should consign the greater part of his produce to the partnership for sale on commission.

It was the custom for the partnership to retain all the net proceeds of the consigned merchandise to apply upon the indebtedness, except that at the beginning of each season when the bankrupt's expenses would be heavy, the partnership would remit to him the proceeds derived from the sale. In accordance with this general plan of operations, money was advanced to the bankrupt in the season of 1929 to enable him to finance his operations of raising and marketing produce. The season of 1929 was late and the crops of the bankrupt were infested with aphis. More than a usual amount of money was therefore necessary to enable the claimant to perfect his crops and prepare them for the market. In 1927 the claimant retained all the net proceeds derived from the sale of the bankrupt's melons after August 1st; in 1928 after August 5th, and in 1929 after September 10th. The retention of the net proceeds after September 10, 1929, was in accordance with the practice of the parties and in conformity with the general custom of commission merchants in San Francisco. On Sep-

tember 12, 14, 16, 18, 20, and 24 appellant paid a total of $15,800 on drafts of the bankrupt, and on October 2, $4,750. The exact date of the consignment of the 75 cars of melons is not stated in the opinion of the referee for the reason that in his opinion the appellant did not know of the insolvency of the bankrupt when such cars were received, and did not acquire that information before September 30, at which time the cars were being transported to eastern markets on open bills of lading to the appellant as consignee. It appears, however, by stipulation in the evidence, that the cars were consigned to the claimant at various dates between September 4 and October 1, inclusive. The melons were sold on various dates between October 4 and November 11.

■ As to appellant's first contention that the transfer under attack, which constitutes a preference, occurred at the time the 75 cars of melons were consigned by the bankrupt to the appellant for sale, at the outset it is manifest that there was no other transfer from the bankrupt to the consignee. He did not expressly authorize the application of proceeds to the appellant's claim, but this was done in pursuance of the general agreement which had been in existence for years and in accordance with the practice of the parties and the custom of commission merchants in San Francisco. When the bankrupt put the produce thus into the possession of the claimant he made the only transfer made by him.

■■ It is true that the District Court properly held that this transfer gave a lien upon the fruit and its proceeds and we may assume it is also true that this lien was waived by the claimant under the law of California. Even so, the act of the creditor in levying an attachment could not operate to shift the date of the transfer by the bankrupt. In dealing with a voidable preference we are primarily determining the effect of an act of the bankrupt knowingly concurred in by the claimant, having the effect of giving an unauthorized preference to the creditor. In the case at bar, at the time the transaction under consideration occurred, there was no fraudulent or voidable preference and we do not see how the mistaken view of the claimant as to its rights resulting in an attachment of the very property upon which it is now declared it had an equitable lien can convert an otherwise lawful transaction into an unlawful one. In Re Chakos (C. C. A.) 24 F.(2d) 482, 485, it was said: "When an assignment of rents is made [by the bankrupt] before the four

months period, the transaction does not become a preference because of the fact that the rentals are collected within the four months period." Similarly in the case of Lowell v. International Trust Co. (C. C. A.) 158 F. 781, where accounts had been assigned to a creditor and were collected within the four months period preceding commencement of bankruptcy, it is held that the fact that the accounts were collected within the four months period did not render the collections a voidable preference. Speaking on that subject the court said at page 782: "It is difficult to perceive on what ground this claim rests, because the substantial rights of the parties were fixed at the time the assignment was made, and the collections were only incidents thereof."

See, also, Jordan v. Greenwood (D. C.) 23 F.(2d) 506; Matter of Frazin (C. C. A.) 201 F. 86; Mass. Trust Co. v. MacPherson (C. C. A.) 1 F.(2d) 769; In re Evansville Broom Co. (C. C. A.) 29 F.(2d) 643.

We think that the transfer of property from the bankrupt to the claimant, the appellant herein, occurred at the time of the consignment of the melons to the appellant and that the validity of the transaction must be judged by the situation at the time of this transfer, and so judged, in view of the finding of the referee, it must be held that the appellant was not aware of the insolvency of the bankrupt and consequently the preference is valid.

■■ The transaction is valid for another reason. The Bankruptcy Act (11 USCA § 108, July 1, 1898, c. 541, § 68, 30 Stat. 565) expressly authorizes a set-off in case of mutual credits. The applicable language of that section is as follows: "(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

This provision of the statute, borrowed from the English Bankruptcy Act, asserts a broader right of set-off than is usual because of the broad significance given to the phrase "mutual credits." See Rose v. Hart, 8 Taunt. 499; Catlin v. Foster, 5 Fed. Cas. page 305, No. 2,519. The rule contended for by appellant seems to be sustained by the authorities cited. Appellant states: "It is well settled that where a creditor has goods or choses in action placed in his hands before the bankruptcy under such circumstances that the deposit will result in a debt, as if they are deposited for sale or collection, a case of 'mu-

tual credit' arises within the meaning of the Bankruptcy Act to which the doctrine of set-off is applicable. Citing Catlin v. Foster, Fed. Cas. No. 2,519, 5 Fed. Cas. 303; Marks v. Barker, Fed. Cas. No. 9096, 16 Fed. Cas. 765; In re Holbrook, Fed. Cas. No. 2534, 5 Fed. Cas. 325; Goodrich v. Dobson, Fed. Cas. No. 18,297, 30 Fed. Cas. 1081."

The court, in Catlin v. Foster, states as a case in which set-off will arise, "when there is a debt on one side and a delivery of property with directions to turn it into money on the other." In Murray v. Riggs, 15 Johns. (N. Y.) 571, 592, the court, in dealing with the question of a set-off in bankruptcy cases, said: "That mutual credit was not confined to pecuniary demands, but extended to all cases where the creditor had goods in his hands of the debtor, and which could not be got at without an action at law, or a bill in equity. Numerous cases might be cited, both at law and in equity, which sanction and enforce this principle."

The case of Goodrich v. Dobson, supra, is an instructive case on the right of set-off in a bankruptcy proceeding, upon facts somewhat similar to those in the case at bar. It deals with a situation where a manufacturer of cloth had consigned his goods to a New York merchant for sale. The property was sold after the bankruptcy and the amount derived therefrom applied upon an outstanding indebtedness owed by the manufacturer to the merchant. We quote a brief excerpt from the opinion of the court in that case: "The conclusions which are sanctioned by the authorities are that where a known debt is due from the bankrupt, and goods have been deposited with the creditor, not as a pledge, for sale under such circumstances of dealing between the parties that a conversion into money is, in the ordinary course of business, the natural result of the transaction, such goods constitute a mutual credit given by the bankrupt to the other; and when they are sold, either before or after the filing of the petition, the avails may be set off against any unsecured claims due from the bankrupt, under the restrictions provided in section 5073 of the Revised Statutes."

To the same effect we find the decision of the court in In re Holbrook, supra. See, also, Marks v. Barber, 16 Fed. Cas. page 765, No. 9,096; Matter of Cross (C. C. A.) 273 F. 39.

Upon the proposition of set-off, appellee states:

"In the instant case, claimant, at the time the preferences were created, owed the bankrupt nothing. The only existing indebtedness was due from the bankrupt to the claimant. There was, therefore, no mutuality, and thus section 68 cannot apply.

"Presuming, however, such mutuality existed—still claimant cannot offset preferential payments to it on the theory that the payment by the bankrupt, coupled with the demand for its return by the trustee, creates the 'mutuality' the statute contemplates."

At the time of the consignment of the melons by the bankrupt to the appellant, the appellant owed the bankrupt the duty of converting the melons into money for the account of the bankrupt, and it is this obligation of the consignee which the cases above cited held to be a credit in his favor to be offset against the credit of the consignee for moneys previously advanced, thus, to the extent thereof, canceling the mutual obligation or mutual credit.

As to the second proposition that the preferential payment cannot be set off against the debt upon which proposition the appellee cites Walker v. Wilkinson (C. C. A.) 296 F. 850, it is sufficient to point out that this assumption begs the question as to whether or not the payment is preferential. If the transaction were fixed by the dates of the consignment of the melons, there was no voidable preference under the law. This is what is contended for by the appellant and is well settled by the authorities. The conversion of the goods into money is a mere incident in the transaction.

The order of the referee, approved by the trial court, is reversed with instructions to allow appellant's claim for the full amount claimed; that is, the original indebtedness less the credits for the 75 cars of melons. That is to say for $51,101.53.