**1142**

In the Matter of **INTERSTATE RECORD DISTRIBUTORS, INC., et al., Debtors.**
**No. 66 B 33.**

United States District Court
S. D. New York.
Jan. 14, 1970.

Levy, Levy & Ruback, New York City, for debtors; Sydney Basil Levy, Gary L. Blum, New York City, of counsel.

Rosenman Colin Kaye Petschek Freund & Emil, New York City, for CBS; Ambrose Doskow, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

This petition for review of a referee's order in a Chapter XI proceeding presents a neat question of law arising from stipulated facts.

The debtors were (and, since confirmation of the arrangement, continue to be) dealers, jobbers and distributors of phonograph records. Columbia Broadcasting System, Inc. (CBS), manufactured and sold such records to the debtors. Until June 22, 1965, CBS and other manufacturers were subject to an excise tax measured by the sales price of the records, 26 U.S.C. § 4141 (1964). Under the statutory scheme the manufacturer was to exact the tax from his wholesalers who, in turn, passed it along to their purchasers and, ultimately, to the consuming public.

The excise tax was repealed effective June 22, 1965. Pub.L. No. 89–44, 79

Stat. 136. The repealer provided for refunds by the government of taxes which had been paid upon items remaining in the hands of distributors and retailers. Under the statute and implementing regulations, the refund could be claimed and obtained only by the manufacturer, who was required to file claim therefor on or before February 10, 1966, based upon a request from his purchaser-dealers made before January 1, 1966. In order to obtain the refund the manufacturer was required either to have made reimbursement to the dealer or to have obtained the dealer's written consent to the government's payment of the refund to the manufacturer. Detailing the procedure after the manufacturer's receipt of the refund, the pertinent Treasury Regulation, 26 C.F.R. § 145.2–1(c), says:

> "Payment shall be made, at the manufacturer's option, in cash, by check, or by credit to the dealer's account as maintained by the claimant. The amount of the payment which may be made by crediting such account may not exceed the undisputed debit balance due at the time the credit is made."

Pursuant to the foregoing statute and regulation, the debtors on December 23, 1965, filed with CBS requests for refunds supported by certifications of their inventories as of June 22, 1965. The forms used for this purpose, evidently created by CBS, contained, *inter alia*, the following language, which has been deemed significant by the debtors and by the learned referee:

> "The undersigned consents to the allowance to the manufacturer of the floor stock credit or refund of the excise tax imposed by the Internal Revenue Code of 1954 with respect to the phonograph records included in the inventory set forth herein, with the understanding that such tax refunded

by the Federal Government shall be refunded to the undersigned."

On February 5, 1966, four days or so before it filed its claim for refund with the Internal Revenue Service, CBS issued to one of the debtors its credit memorandum for $17,020.03, about 85% of the total tax refunds due.[1] In the meantime, on January 18, 1966, the Chapter XI petitions had been filed.

CBS received a portion of the claimed refund on March 15, 1966, and took the balance as a credit in its final excise tax report for the year ending June 30, 1965. On March 20, 1966, it issued further credit memoranda to the debtors for the balance of the refund due them, making a total thus credited of $19,534.-85. This is the amount now in dispute.

By motion dated September 22, 1966, the debtors sought an order requiring that CBS pay this sum over to them as debtors in possession. Opposing the application, CBS, which had filed unsecured claims in the proceeding totalling over $80,000, contended that the refund should properly be retained by it as a set-off under § 68(a) of the Bankruptcy Act, 11 U.S.C. § 108(a).[2] With the issue thus posed still unresolved (and, apparently, with the required schedule of assets containing no indication of the debtors' claim against CBS), the plan of arrangement was confirmed by order of the referee dated November 4, 1966. The approved plan provided that unsecured creditors (including CBS) would be paid 12½% of their scheduled unsecured claims. Thereafter, of course, the contest involved only the respective pleas of the sometime debtors (now out of Chapter XI) for recovery of 100% from CBS as against the latter's fractional realization on its larger claims.

In this posture, the debtors' motion was decided by the order of the referee

---

1. The debtors, whose separate Chapter XI proceedings were consolidated on April 28, 1966, have been treated as if they were one for present purposes. All agree that this is appropriate, and the court proceeds upon that basis.

2. "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

dated September 24, 1969. He determined that a tax refund of the kind in question "comes into existence when and to the extent that the application therefor is allowed by the Internal Revenue Service." He concluded that this "was not payment of a debt due either Columbia or the debtors;" that CBS "had no proprietary interest in the tax refund;" that the refund, when allowed, "constitute[d] property of the debtors;" that the consent form, quoted earlier herein, "reposed in [CBS] the obligation to pay over the refund to the debtors upon its receipt;" that "[t]he relationship between Columbia and the debtors precluded Columbia from exercising the right of setoff;" and that there were, in sum, "no mutual debts or credits between Columbia and the debtors." Accordingly, the debtors' motion was granted, bringing CBS here as petitioner for review.

While the question is close, and the learning of the able referee gives pause,[3] the court concludes that his ruling must be reversed. The heavy weight of precedent and the business sense of the matter support the contention of CBS that it was entitled to set off the tax refund against its much larger claims upon the debtors. It is not in the end a guide to decision to say that CBS lacked a "proprietary interest" in the refund. In terms of the bankruptcy law, it would be equally possible, but equally without significance, to speak this way of a carrier's hold upon C.O.D. receipts of his bankrupt shipper, In re W. & A. Bacon Co., 261 F. 109 (D.Mass.1919), the government's possession of taxes admittedly overpaid and due for refund, Luther v. United States, 225 F.2d 495 (10th Cir.

1954), cert. denied, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956), or a consignee's "interest" in the proceeds of sale of consigned goods, Half Moon Fruit & Produce Co. v. Floyd, 60 F.2d 799 (9th Cir. 1932). Yet the cited situations were held proper for set-off under § 68(a).

█ It is suggested that CBS was a "trustee," not a mere debtor. But the label does not fit. Nothing the parties said or did indicated the requisite intent to create a trust. As held in a thorough opinion precisely apposite here, the "fact that one person has collected for, and has in his possession, money belonging to another does not, without more, establish the relationship of trustee and cestui que trust." Wolf v. Aero Factors Corp., 126 F.Supp. 872, 883 (S.D.N.Y.1954), aff'd, 221 F.2d 291 (2d Cir. 1955). For whatever light it casts, the setting of the tax statute, as construed in the Treasury Regulation, fails to support the trust theory; the Regulation contemplates explicitly the alternative of a "credit" by the manufacturer against the dealer's "debit balance."

Seeking positive support from this aspect of the Regulation, the debtors point out that the consent form drafted by CBS failed to embody such a crediting arrangement, but announced the claimant-dealer's "understanding that such tax refunded by the Federal Government shall be refunded to the undersigned." The quoted words do not carry the weight this argument would place upon them.[4] The reference to "refund" in this fashion is no more effective in terms of Bankruptcy Act § 68(a) than would be a carrier's natural reference to an obligation to "pay over" C.O.D. proceeds, In re W. & A. Bacon Co., *supra*, or a con-

---

3. Another referee, in the Eastern District of New York, reached a similar conclusion in In re Overseas National Airways, Inc., 63 B. 1043, May 4, 1965.

4. The verb "refund" is not one of art in our context, and there is no suggestion in the record that the CBS draftsman of the form was straining to give something away when he used it. The dictionary, admittedly not the most refined of legal authorities, has some fortuitously apposite sounds but none that are helpful to the debtors. It defines "refund" as meaning "To return (money) in restitution, repayment, balancing of accounts, etc., as, to *refund* the price of a defective machine; to *refund* a hundred dollars excess on a tax." Webster's New International Dictionary (2d ed., unabridged, 1950).

signee's description of its duty, in normal parlance, to "remit" proceeds, Half Moon Fruit & Produce Co. v. Floyd, *supra*, or, indeed, of the government's own obligation to make a payment known exactly as a "refund," Luther v. United States, *supra*. There was obviously no duty to make a "refund" "in specie, whatever the effect of that might have been," In re W. & A. Bacon Co., *supra*, 261 F. at 110—in short no duty of a relevant kind beyond that of an admitted debtor.

Similar observations apply to the suggestion that CBS "waived" its rights under § 68(a) by the choice of words in the consent form. There is nothing to suggest the knowing relinquishment of the rights promptly and steadily asserted by CBS at every pertinent time. Cf. Libby v. Hopkins, 104 U.S. 303, 26 L.Ed. 769 (1881); Updike v. Oakland Motor Car Co., 53 F.2d 369 (2d Cir. 1931).

█ There is also the argument, sustained by the referee, that the refund never "existed" until it was "allowed" by the Internal Revenue Service, and that this must be deemed to preclude application of § 68(a). This slightly metaphysical point is contrary to precedent and to the substantial realities that should govern the subject in any event. It is enough answer to point out that "the overpayments had been made and the liability therefor existed" well in advance of the Chapter XI petitions. Luther v. United States, *supra*, 225 F.2d at 498; In re Pottier & Stymus Co., 262 F. 955, 956 (2d Cir. 1919); cf. United States v. Brunner, 282 F.2d 535 (10th Cir. 1960).

It appears from the undisputed facts that the exact amount of the liability was known or readily knowable before the filing of the petitions. But it would make no difference if that were not so. The agreement entered into prior to the commencement of the Chapter XI proceedings provided that CBS should "refund to the debtors upon receipt" the amount of the refund. This was the source of CBS's unquestioned duty to the debtors. The matured "obligation," even if its exact amount remained for later determination, was sufficient to ground the right of set-off under § 68 (a). Luther v. United States, *supra*; Half Moon Fruit & Produce Co. v. Floyd, *supra*, 60 F.2d at 802; In re Dynamic Electronics-New York, 120 F.Supp. 126, 128 (S.D.N.Y.1954).

█ Finally, the debtors invoke "equitable principles," urging that the court must prevent CBS from achieving "an unfair advantage over the other creditors." The primary point is, of course, that the balancing Congress has decreed in § 68(a) is by definition "fair," so that the set-off, if it is allowable under the statute, is, as Judge Hough said, "a sort of lawful preference." In re Pottier & Stymus Co., *supra*, 262 F. at 956. Beyond that, noting again that the arrangement proceedings ended long ago, that the debtors appear never to have concerned themselves about the possible interest of the other creditors in the excise tax refunds, and that the referee's decision simply gives the refunded sums completely to the debtors while they pay off their much larger obligations to CBS at 12½ cents on the dollar, the court finds no extra-statutory "equitable principles" fairly helpful to the debtors' cause.

The order of the referee will be reversed and the set-off allowed. Settle order.