### In re W. & A. BACON CO.

(District Court, D. Massachusetts. October 15, 1919.)

No. 25341.

1. BANKRUPTCY ⟨⟩154—SET-OFF AGAINST TRUSTEE.

Claimants, who delivered parcels for bankrupt's store, for some of which they collected the price, which they customarily paid over every ·few days, rendering bills for their services once or twice each month, *held* entitled to apply the proceeds of such collections in their hands at the time of bankruptcy on the amount due them for services.

2. TRUSTS ⟨⟩30½ (1)—RELATION OF PARTIES; COLLECTION OF MONEY FOR ANOTHER.

The fact that one person has collected money for another and has it in his possession does not, without more, establish a trust relation between them.

In Bankruptcy. In the matter of W. & A. Bacon Company, bankrupt. On review of orders of referee. Affirmed.

Morris, Campbell & Abbott and Charles H. Morris, all of Boston, Mass., for creditor.

Dunbar, Nutter & McClennen and George R. Nutter, all of Boston, Mass., for alleged bankrupt.

MORTON, District Judge. The question certified relates to the allowance by the referee of certain set-offs to the claimants, of whom there are several.

The precise facts differ somewhat with the different claims; but the basic facts are similar in all, and the differences are not sufficient to change the results. The matter can best be considered as a single case, as was done by the learned referee. Certain of his inferences or statements of fact are objected to by the alleged bankrupt, it being a case of composition before adjudication; but the facts themselves are clear, and appear not to have been seriously in controversy.

[1] The claimants were in the business of delivering parcels for Boston stores. They collected parcels from the stores and carried them to the purchasers, and for this service they charged the store a certain rate per parcel. Some of these parcels were C. O. D.; i. e., were not to be delivered, except upon receipt of the purchase price. On them the

claimants collected the price and returned it to the store, making in some cases an additional charge for the collection.

Bills for delivery charges were rendered by the claimants to the bankrupt monthly or semimonthly; but the amounts collected on C. O. D. parcels were paid over to the bankrupt within a few days after collection and did not figure in the monthly bill. One of the claimants deducted from its remittances its return charge on the money, and the others undoubtedly might have done so, if they had desired; but in fact they returned the collections without deduction and included their charges on C. O. D. parcels in their general bills. There was no written agreement, and no exact and explicit oral agreement, between the bankrupt and the delivery companies. It was understood between the bankrupt and the companies that the latter were responsible for all parcels for which they receipted, and must either return the parcel or pay for it. When C. O. D. parcels were lost, or the price was not remitted, a credit was claimed by the store on the delivery company's monthly bill.

The money received by the claimants on C. O. D. parcels was, except by one or two of them, deposited in their general bank accounts, and was remitted by check. There was no understanding that it was to be kept separate. Under the course of business as stated there would be in a delivery company's hands, at any given time, two or three days' collections and undelivered parcels on which collections were to be made. The amounts due a delivery company would frequently exceed the amount of collections and parcels in its hands, and did so at the time of this failure.

On the bankruptcy of the Bacon Company the several claimants applied on their current bills against it for delivery charges the moneys then in their hands from C. O. D. collections, and proved for the balance due them. The present question is whether they had the right to make this set-off, or whether they must return the C. O. D. money to the bankrupt.

The bankrupt contends that the collections constituted trust funds, which the claimants were bound to return to the Bacon Company, regardless of the state of its general account, and with no right of set-off. That depends on whether, quoad the collections, the claimants occupied a trust relation to the bankrupt. It does not seem to me that they did. The relation, as I view it, was a purely commercial one, and there was nothing of a fiduciary nature in it. The bankrupt employed the claimants to transact certain business for it, instead of doing the business itself. As part of it the claimants were to make collections when required, for which they were accountable to the bankrupt; the bankrupt being indebted to them in turn for services rendered. There was nothing which expressly or impliedly bound the claimants to return the collections in specie, whatever the effect of that might have been, and their liability for parcels stolen or lost was part of the general understanding. In respect to this, as in other matters, each party seems to have relied on the general financial responsibility of the other.

The course of business was such that there were mutual accounts between the bankrupt and the claimants; no distinctions were made;

so far as appears, as to the character of the claimant's liability (whether at law or in equity), in regard to any items entering into the account, except that the moneys collected by them were paid over within two or three days after collection, instead of monthly or semimonthly when the bills were rendered. That of itself does not show, I think, that the money so paid over was regarded, or should be treated, as trust funds. It was money which belonged to the bankrupt, and which a proper dispatch of the business intrusted to the claimants by the bankrupt required should be promptly paid over.

[2] But the fact that one person has collected money for, and has in his possession money belonging to, another, does not, without more, establish the relation of trustee and cestui que trust between them. Although an agent is bound to act with all fidelity in regard to matters intrusted to him by his principal or by a bailee, he is not a trustee, nor accountable as such. For any violation of his duties and obligations towards his principal he is liable to an action at law in which he can avail himself of the defense of set-off or recoupment, as the case may be. If one of the parties be acting for an undisclosed principal, a set-off might result in the application of money belonging to one person to the payment of a debt due from another; but that is not the present case. The money which the claimants seek to set off belongs to the bankrupt, and will be applied by the set-off to the payment of the bankrupt's own debts. The doctrine of set-off is in itself eminently just, and is increasingly favored in courts of bankruptcy, because of its essential fairness. See Clifford, Trustee, v. Oak Valley Mills Co. (D. C.) 229 Fed. 851, 853, and cases cited.

No decision has been called to my attention requiring a denial of the right on the facts here shown. In the Western Tie & Timber Co. Case, 196 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571, relied on by the bankrupt, the laborers were indebted to the bankrupt, and the tie company to the laborers. By agreement between the laborers, the bankrupt, and the company the last-named made deductions from the wages and paid the deductions to the bankrupt on account of the laborers and in settlement of their bills with him. That case seems to me quite distinguishable from the present one.

Order of referee affirmed.