430 F.2d 1017
 In the Matter of INTERSTATE RECORD DISTRIBUTORS, INC., Sunshine State Record Distributors, Inc., Florida Record Distributors, Inc., Garden State Record Distributors, Inc., Debtors-Appellants,
v.
COLUMBIA BROADCASTING SYSTEM, INC., Appellee.
 No. 759.
 Docket 34693.
 United States Court of Appeals, Second Circuit.
 Argued May 6, 1970.
 Decided August 3, 1970.
 
 Gary L. Blum, New York City (Levy, Levy & Ruback, New York City, on brief) for appellants.
 Ambrose Doskow, New York City (Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, on brief), for appellee.
 Before LUMBARD, Chief Judge, WATERMAN, Circuit Judge, and JAMESON, District Judge.*
 PER CURIAM:
 
 
 1
 Appellants (hereinafter sometimes referred to as "Interstate") are debtors in possession, under a plan entered in 1966 on the completion of proceedings on their Chapter XI petitions pursuant to section 332 of the Bankruptcy Act. They seek $19,534.85 from Columbia Broadcasting System ("CBS"), one of their principal creditors in the bankruptcy proceedings. Interstate were and are dealers, jobbers, and distributors of phonograph records; CBS manufactured and sold such records to Interstate. Until July 22, 1965, CBS and other manufacturers were subject to an excise tax measured by the sales price of the records, 26 U.S.C. § 4141 (1964). Under the statutory scheme, the manufacturers exacted the tax from their wholesalers, who in turn passed it along to the retailers and, ultimately, to the consuming public.
 
 
 2
 The excise tax was repealed effective July 22, 1965, P.L. No. 89-44. The repealer provided for refunds of taxes paid upon records remaining in the hands of distributors and retailers. The refunds were to be claimed by the manufacturers based upon the requests of their purchaser-dealers. Upon Interstate's request, CBS filed and received a refund of $19,534.85, the amount here in dispute. Between Interstate's request and CBS' filing, Interstate filed their Chapter XI petitions. In due time CBS received the refund and issued credit memos against Interstate's accounts with it.
 
 
 3
 By motion to the referee Interstate sought an order requiring CBS to pay the sum over to it as debtor in possession. Opposing the motion, CBS which had filed unsecured claims in the Chapter XI proceeding totalling over $80,000 claimed that the tax refund should be retained by it as a set-off under section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108(a) (1964). With the situation unresolved, a plan paying creditors 12½% of their unsecured claims was confirmed by the referee.
 
 
 4
 Sometime later, the referee decided the motion in favor of Interstate and ordered CBS to turn over the sum. The district court reversed, holding that "the heavy weight of precedent and the business sense of the matter support the contention of CBS that it is entitled to set off the tax refund against its much larger claim upon the debtor." 307 F. Supp. at 1144. This appeal followed.
 
 
 5
 Appellants raise a host of arguments, all of which were considered and rejected by the district court. We are in substantial agreement with the position taken by the court below, and affirm on the basis of Judge Frankel's opinion, 307 F. Supp. 1142 (S.D.N.Y.1970).
 
 
 6
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation
 
 
 
 7
 WATERMAN, Circuit Judge, concurring in the result:
 
 
 8
 I concur with my brothers that the tax regulation establishing the refund in question anticipated that the manufacturer should have the right to set off, i. e., credit, the amount refunded against any amounts owed to the manufacturer by the retailer and that, in the light of the regulation, the agreement of the parties did not preclude such a crediting. The tax regulation, 26 C.F.R. § 145.2-1(c) states in relevant part:
 
 
 9
 Payment shall be made, at the manufacturer's option, in cash, by check, or by credit to the dealer's account as maintained by the claimant. The amount of the payment which may be made by crediting such account may not exceed the undisputed debit balance due at the time the credit is made. * * *
 
 
 10
 Interstate Record argues that Columbia Broadcasting System waived its right under the regulation to set off the payment received against amounts owed to CBS by Interstate, in that it obtained Interstate's agreement to have CBS collect the refund its due "with the understanding that such tax refunded by the Federal Government shall be refunded to the undersigned [Interstate]." Whatever connotation the broad word "refund" may legitimately have in the context of ordinary business transactions, it is my view that here the word must be interpreted in light of the regulation. The regulation was issued in furtherance of the Excise Tax Refund Act of 1965 and specifically permitted a payment so refunded to be credited by the receiver of the payment to his dealer's account.
 
 
 11
 The phrase "refunded to the undersigned" in the agreement the parties entered into must be viewed in the context of the refunding machinery the Treasury regulations prescribed was to be used and the word "refunded" itself is not so specific a word as to preclude CBS from crediting any amount received for the account of one of its dealers upon a debt owed to it by that dealer.
 
 
 12
 I do not concur with my brothers, however, in endorsing those parts of the lower court's opinion which may be read as permitting a set-off in the instant case even if the tax regulation had been so worded as to preclude CBS from crediting the account which Interstate had with CBS. Both parties agree that money held by the creditor of a bankrupt in trust for the bankrupt cannot be set off under Section 68(a) of the Bankruptcy Act against debts owed the creditor by the bankrupt, and that only mutual credits, or debts, can be so set off. Thus we have held, for example, that a tenant's security deposit with his landlord cannot be offset against the bankrupt tenant's debt to the landlord, for under state law that deposit is held in trust for the tenant by the landlord. Fore Improvement Corp. v. Selig, 278 F.2d 143 (2 Cir.1960).
 
 
 13
 It seems to me that the lower court failed to point out the salient differences between trusts and debts for purposes of applying the Section 68(a) setoff provision. Although the person seeking the set-off need not have a "proprietary interest" in the funds which he wishes to set off, see, e.g., Half Moon Fruit and Produce Co. v. Floyd, 60 F.2d 799 (9 Cir.1932), cited by the court below, I believe it necessary that the party seeking the set-off must have held the money with the understanding that he could, at his option, apply that sum against debts of the party who later becomes bankrupt. In other words, it is necessary that the party who eventually becomes bankrupt could not, before bankruptcy, have compelled the other party to return the questioned sum in full and could not have prevented his creditor from using it to reduce his debt.
 
 
 14
 The cases cited by the lower court do not contradict this point of view. In Luther v. United States, 225 F.2d 495 (10 Cir.1954), cert. denied, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956), the Government offset a tax refund owed by it to the bankrupt against sums owed by the bankrupt to the Commodity Credit Corporation. The court specifically held that the Government would have had the right to offset the two sums quite apart from the event of bankruptcy. In Half Moon Fruit & Produce Co. v. Floyd, supra, goods were consigned for sale to the Produce Company by the party who later became bankrupt. There the court's findings indicate that the bankrupt had intended, before bankruptcy, that the proceeds of the sale should be used to reduce his debt to the Produce Company. The set-off was therefore allowed. In In re W. & A. Bacon Co., 261 F. 109 (D.Mass.1919), the bankrupt had shipped goods C.O.D., and the carrier sought to set off several days' worth of C.O.D. receipts against the bankrupt's debts to the carrier. The court allowed the set-off, observing that "There was nothing which expressly or impliedly bound the claimants to return the collections in specie. * * *" Id. at 110. Thus in the court's view the carrier would have been free before the bankruptcy to use the C.O.D. receipts to reduce the debts of the now-bankrupt party.
 
 
 15
 The law indicates, therefore, that if the tax regulation involved in this case had contemplated that the manufacturer was required to return the tax refund to the retailer in each case in full, so that the retailer could have prevented a set-off before bankruptcy, then the money would have been held by the manufacturer in trust for the retailer and could not have been set off against the retailer's debt to the manufacturer. To the contrary, the tax regulation specifically permitted crediting.
 
 
 16
 Therefore, I believe that the reasonable interpretation of the language of the parties' pre-bankruptcy agreement, an agreement made with the regulations in mind, did not alter the relationship between them that the regulation contemplated.
 
 
 17
 I would affirm the order entered below.